**FITZGERALD MONROE FLYNN PC**
JACK FITZGERALD (SBN 257370)
*jfitzgerald@fmfpc.com*
MELANIE R. MONROE (SBN 275423)
*mmonroe@fmfpc.com*
TREVOR FLYNN (SBN 253362)
*tflynn@fmfpc.com*
CAROLINE S. EMHARDT (SBN 321222)
*cemhardt@fmfpc.com*
PETER GRAZUL (SBN 342735)
*pgrazul@fmfpc.com*
2341 Jefferson Street, Suite 200
San Diego, California 92110
Phone: (619) 215-1741
***Counsel for Plaintiff***

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STELLA TATOLA, on behalf of herself, all others similarly situated, and the general public, <br><br> Plaintiff, <br><br> v. <br><br> BARNABY LTD., LLC, and MICROSOFT CORPORATION, <br><br> Defendants. | Case No: 24-cv-3789 <br><br> <u>CLASS ACTION</u> <br><br> **COMPLAINT** <br><br> <u>JURY TRIAL DEMANDED</u> |

Plaintiff Stella Tatola, on behalf of herself, all others similarly situated, and the general public, by and through her undersigned counsel, brings this action against defendants Barnaby Ltd., LLC ("Barnaby") and Microsoft Corporation ("Microsoft") and alleges the following upon her own knowledge, or where she lacks personal knowledge, upon information and belief, including the investigation of her counsel.

## INTRODUCTION

1.     Through at least two different websites, Barnaby sells adult toys and products aimed at enhancing sexual wellbeing and pleasure. Barnaby's websites allow consumers to view a diverse catalogue of these adult toys and products, and consumers like Plaintiff visit the websites to confidentially shop for such adult toys and products.

2.     Unbeknownst to Plaintiff and other Barnaby website users, and constituting the ultimate violation of privacy, Barnaby allows an undisclosed third-party, Microsoft, to intercept, read, and utilize for commercial gain consumers' private information about their sexual practices and preferences, gleaned from their activity on Barnaby's websites. This information includes but is not limited to product searches and purchase initiations, as well as the consumer's unique Microsoft identifier.

3.     Plaintiff, on behalf of herself and all others similarly situated, brings this class action to enjoin Barnaby's disclosure and communication to Microsoft of private and confidential information without consent, and to recover compensation for injured Class Members.

## JURISDICTION & VENUE

4.     This Court has original jurisdiction over this action under 28 U.S.C. § 1332(d)(2) (The Class Action Fairness Act) because the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and at least one member of the class of plaintiffs is a citizen of a State different from Defendants. In addition, more than two-thirds of the members of the Class reside in a state other than the state in which Defendants are citizens, and therefore any exceptions to jurisdiction under 28 U.S.C. § 1332(d) do not apply. The Court also has original jurisdiction over this action under 28 U.S.C. § 1331 because it is a civil action arising under the laws of the United States (the Federal Wiretap Act, 18 U.S.C. §§ 2510, *et seq.*).

5.     The Court has personal jurisdiction over Defendants because they have purposely availed themselves of the benefits and privileges of conducting business activities within California by making Barnaby's websites, embedded with Microsoft's tracking tool, Clarity, available to California consumers.

6.  Venue is proper in this Northern District of California pursuant to 28 U.S.C. § 1391(b) and (c), because Defendants reside in (*i.e.*, are subject to personal jurisdiction in) this district, and because a substantial part of the events or omissions giving rise to the claims occurred in this district.

**DIVISIONAL ASSIGNMENT**

7.  This civil action arises out of acts and omissions of Defendants that occurred in San Francisco County. Pursuant to Civil Local Rule 3-2(c) and (d), this action is therefore correctly assigned to the San Francisco or Oakland Division.

**PARTIES**

8.  Plaintiff Stella Tatola is a California citizen over 18 years of age who resides and intends to remain in San Francisco County, California.

9.  Defendant Barnaby Ltd., LLC is an Ohio limited liability company with its principal place of business in Concord, California.

10.  Defendant Microsoft Corporation is a Washington corporation with its principal place of business and headquarters in Redmond, Washington.

**FACTS**

**I.  By Using its Websites, Consumers Communicate Private Sexual Information to Barnaby**

11.  Defendant Barnaby—d/b/a "Good Vibrations"—purchased "Babeland," previously a Washington limited liability company, in August 2017. Although "Babeland" operates as a separate brand, Barnaby manages both https://www.goodvibes.com and https://www.babeland.com (the "Websites"). Together, the Websites generate approximately $37 million in annual revenue.

12.  When consumers browse the Websites to shop for and purchase adult products, sex toys, lingerie, and other similar items, whether by clicking on items or using search terms, they are communicating private and extremely personal information to Barnaby. This information includes, but is not limited to sexual preferences, sexual orientation, sexual practices, and adult product preferences (collectively, "Private and Protected Sexual Information" or "PPSI").

13.  For example, upon arriving at the Websites, users are presented with various product categories, including "vibrators," "dildos," "lube," "penis toys," "anal toys," "BDSM fetish," "Harnesses,"

and "Lingerie."[1] Selecting among these categories reveals preferences and practices and has the capacity and tendency to reveal users' sexual orientation.

14.     The Websites' home pages also feature articles on various topics such as masturbation, level of sexual experience, "tips & tricks," expert advice, and sexual health, all of which would, if a user browses that information, further reveal PPSI of the user. As Barnaby states on its homepages, it "has been helping people discover and celebrate pleasure since 1977. Whatever your gender, identity, kink, fantasy, or desire to explore, [Barnaby is] here to help on your sexual journey" and "be your guide."[2]

**II.     Users of the Websites Have a Reasonable Expectation of Privacy in their PPSI**

15.     When consumers communicate their PPSI to Barnaby, they reasonably believe Barnaby maintains the confidentiality of that information. This is due to both the extremely sensitive and private nature of the information involved, and affirmative representations by Barnaby.

16.     On the Websites' "Help" pages, under "Privacy and Security," Barnaby states "[w]e are committed to protecting your privacy. We NEVER share our customers' personal information with anyone."[3] This representation is directly followed by the statement and link to "Read [Barnaby's] Privacy Policy."

**Privacy and Security**

Privacy

We are committed to protecting your privacy. We NEVER share our customers' personal information with anyone. **Read our Privacy Policy**

17.     Clicking on **"Read our Privacy Policy"** brings the user to Barnaby's Privacy Policy, which is substantively identical on both Websites.[4]

18.     In its Privacy Policies, Barnaby represents it "undertake[s] substantial efforts to protect the confidentiality of the identity, preferences, and other information it has collected about individual [users] and, except as otherwise set forth in this Privacy Policy, will not knowingly allow access to this information to anyone outside [Barnaby]."

---

[1] *See* Websites.

[2] *Id.*

[3] www.goodvibes.com/help and www.babeland.com/help (the "Help Pages").

[4] *See* www.goodvibes.com/privacy-policy and www.babeland.com/privacy-policy (the "Privacy Policies").

*Tatola v. Barnaby Ltd., LLC et al.*
CLASS ACTION COMPLAINT

19.    In addressing "Usage Data and Site Activity," the Privacy Policies also twice reassure users that Barnaby collects only "certain limited non-personally identifying information" and "[t]his information does not include . . . [Personally Identifying Information ("PII")]."

20.    Regarding "Marketing," the Privacy Policies further represent Barnaby "may share with third parties" only "certain non-personally identifying log information your browser makes available whenever you visit the Website[s]."

21.    Finally, in response to the question "How Does [Barnaby] Use Your PII?," the Privacy Policies represent Barnaby "will not give, rent, loan or otherwise make available [users'] PII to third parties without your consent."

III.    **Barnaby Permits Microsoft to Eavesdrop on Users' Website Sessions through the Undisclosed and Pervasive Embedding of Microsoft's Clarity Tool Throughout the Websites**

A.    **Microsoft Clarity**

22.    Microsoft owns, maintains, and allows use of an analytics tool called Clarity, which was launched in approximately October 2020 and permits website owners to track visitors' actions by providing "Recordings in Real Time" so that website owners can "view[ ] live recordings that recreate user interactions with [their] website/app. These include mouse movements, clicks/taps, scrolls, navigation, and many more."[5] Website owners can receive these Clarity services merely by adding the tracker's source code to their websites.

23.    Once the Clarity tracker is embedded in a website's source code, in addition to providing website owners these services, it sends data regarding specific user actions, and their unique identifiers, to Microsoft.

24.    Clarity's tracking code uses a cookie to obtain user session data. More specifically, a Machine Unique Identifier ("MUID") is a unique identifier generated by Microsoft and assigned to a specific user to track the user's activity across the internet, and Microsoft Clarify employs the use of MUID cookies to "[i]dentif[y] unique web browsers visiting Microsoft sites."[6]

---

[5] https://learn.microsoft.com/en-us/clarity/session-recordings/clarity-real-time.

[6] https://learn.microsoft.com/en-us/clarity/setup-and-installation/cookie-list.

*Tatola v. Barnaby Ltd., LLC et al.*
CLASS ACTION COMPLAINT

25.    Microsoft uses the data it obtains through Clarity to "gain insights" that allow it to better target advertisements and "improve machine learning models"—*i.e.*, artificial intelligence—"that power many of [its] products and services. Clarity is one of the ways Microsoft gathers this important data . . . ."[7]

26.    Because Microsoft knows that "website publisher[s] . . . might be subject to a law that requires [them] to obtain consent before setting cookies on a user's browser or collecting users' personal information," Clarity can be instructed not to place a cookie until consent is obtained from a website user.[8] Clarity's cookies inform Microsoft whether Clarity has been so instructed on a given website.

**B.    Barnaby Allows Microsoft to Eavesdrop on Website Users Without Their Consent**

27.    Defendants' use of Clarity is persistent throughout Barnaby's Websites. When users interact with the Websites, Barnaby shares their PPSI directly with Microsoft, including their MUID, immediately and automatically. Both Websites operate identically in this regard.

28.    Users of the Websites can choose between different categories of products such as, for example, the "Anal Beads" category, depicted on the GoodVibes website below.



---

[7] https://clarity.microsoft.com/pricing.

[8] https://learn.microsoft.com/en-us/clarity/setup-and-installation/cookie-consent?source=recommendations.

*Tatola v. Barnaby Ltd., LLC et al.*
CLASS ACTION COMPLAINT

29.     When a user selects a category to browse on the Websites, that information is transmitted immediately and automatically to Microsoft by Barnaby, through operation of the Clarity code embedded in the Websites. Below shows a "traffic capture" demonstrating Barnaby's automatic transmission of category information and unique MUIDs to Microsoft.



30.     Additionally, any text used in the search bar on the Websites is shared in the same manner, as demonstrated in the search results page and associated traffic capture below.





31.    Barnaby also shares with Microsoft, immediately and automatically, when a user selects a specific product for viewing, including the page of the specific item selected and its name, as demonstrated with respect to the "Trans Masc Pump" shown below.





32.    Barnaby also shares with Microsoft when a user adds a product to the cart, as shown below.

*Tatola v. Barnaby Ltd., LLC et al.*
CLASS ACTION COMPLAINT



33.    Finally, Barnaby shares with Microsoft when a user initiates check out and makes a purchase.

*Tatola v. Barnaby Ltd., LLC et al.*
CLASS ACTION COMPLAINT

```
METHOD: GET +
URL
+ https://bat.bing.com/action/0?ti=1870023678Ver=2&mid=52ce894e-f899-409d-b396-53b9fd1ab133&sid=552b0db01
8e311ef98016d9db85969be&vid=552b350018e311ef912a53ef1bac7a3a&vids=0&msclkid=N&oc=Ecommerce&el=PurchaseRev
=16.96gv=16.96gc=USD&ea=Purchase&    =Y&p=https%3A%2F%2Fwww.goodvibes.com%2F    guest-checkout%2Fthank-you&sw=1
920&sh=1080&sc=24&evt=custom&rn=45720
HEADERS
+ Accept:              image/avif,image/webp,image/apng,image/svg+xml,image/*,*/*;q=0.8
+ Accept-Encoding:     gzip, deflate, br, zstd
+ Accept-Language:     en-US,en;q=0.9
+ Connection:          keep-alive
+ Cookie:              MUID=27A5049686B561DB259E101E87256093; MSPTC=SAw-5XofvPALKB3cWW446vq-Z8hybR-w-
                       JhFCJk0NRw
+ Host:                bat.bing.com
+ Referer:             https://www.goodvibes.com/
  sec-ch-ua:           "Chromium";v="124", "Google Chrome";v="124", "Not-A.Brand";v="99"
  sec-ch-ua-mobile:    ?0
  sec-ch-ua-platform:  "Windows"
+ Sec-Fetch-Dest:      image
+ Sec-Fetch-Mode:      no-cors
+ Sec-Fetch-Site:      cross-site
+ User-Agent:          Mozilla/5.0 (Windows NT 10.0; Win64; x64) AppleWebKit/537.36 (KHTML, like Gecko)
                       Chrome/124.0.0.0 Safari/537.36
```

34.     As shown above, the pervasive nature of the code embedded throughout Barnaby's Websites functions as a wiretap that simultaneously redirects users' communications to third-party Microsoft while they browse and shop on Barnaby's Websites.

35.     Microsoft's eavesdropping is unknown to and without the consent of the Websites' users.

36.     Upon entering the Websites, users are presented with a banner at the bottom of the page representing that Barnaby uses cookies "[i]n order to give you a better service," and that "[b]y continuing to browse the site, you are agreeing to our use of cookies." Users do not need to affirmatively click the "I Agree" button to continue using the Websites and cookies will be employed regardless of whether a user affirmatively agrees.

> In order to give you a better service we use cookies. By continuing to browse the site you are agreeing to our use of cookies.     I Agree

37.     The "cookies" hyperlink brings users to one of Barnaby's Privacy Policies.[9]

38.     In the Privacy Policies, Barnaby states it uses cookies for "authenticating users, remembering user preferences and settings, delivering and measuring the effectiveness of advertising campaigns, [and] analyzing site traffic and trends."

---

[9] Privacy Policies, *supra* n.4.

39.    However, nowhere in the Privacy Policies does Barnaby disclose the specific tracking technology it is using, all of the purposes of that technology, or that the technology permits an unidentified third-party, Microsoft, to eavesdrop on users' PPSI-related communications with Barnaby—communications Barnaby elsewhere ensures users it would "NEVER share . . . with anyone."[10]

40.    Notwithstanding the lack of any mechanism for opting out of or preventing the use of cookies and the Microsoft Clarity tracking technology embedded across the Websites, the Privacy Policies misleadingly tell users they "have the right to choose whether or not to accept cookies."

41.    Further, although Barnaby could have instructed Clarity not to place cookies until Website users consented to their use, it chose not to. As such, Clarity was operating in its default tracking mode, meaning that "[i]t loads immediately," and "before [a] user can indicate whether they consent to [the Websites'] use of cookies."[11] This was known to Microsoft through the cookies it received from Barnaby through Clarity.

**C.    Microsoft's Undisclosed Eavesdropping Violates Barnaby's Privacy Policies and its Website Users' Rights to Privacy**

42.    The pervasive nature of Clarity, and the consistent transmission of each user's communications associated with a unique MUID, enables Microsoft to identify the person who has communicated with Barnaby through the Websites and thus to connect a Website user's PPSI to their identity.

43.    By allowing undisclosed third party Microsoft to eavesdrop and intercept users' PPSI in such a manner—including their sexual orientation, preferences, and desires, among other highly sensitive, protected information—Barnaby violates its Privacy Policies, which state it will never share such information with third parties.

44.    Further, by intercepting website users' PPSI, Microsoft violates users' rights to privacy in their PPSI.

45.    Microsoft's interception of the Barnaby Website users' PPSI exemplifies the utmost invasion of privacy and would be highly offensive to any reasonable person. Microsoft's invasion of users' privacy is

---

[10] *See* Help Pages, *supra* n.3.

[11] https://learn.microsoft.com/en-us/clarity/setup-and-installation/cookie-consent?source=recommendations.

*Tatola v. Barnaby Ltd., LLC et al.*
CLASS ACTION COMPLAINT

particularly offensive given that Microsoft intentionally intercepts users' PPSI with the intent to use it for financial gain through better targeting of advertisements to those users and others, and through improvements to the machine learning models (AI) that power many of its products and services.

**IV.    Privacy Laws**

    **A.    California Invasion of Privacy Act (CIPA)**

    46.    The California State Legislature passed CIPA "to protect the right of privacy of the people of this state." Cal. Penal Code § 630.

    47.    Section 631(a) of CIPA prohibits, *inter alia*:

        a.    Aiding or permitting a third party to read or learn the contents of any message, report, or communication that is in transit or passing over any wire, line, or cable, or is being sent from or received at any place within California, without the consent of all parties to the message, report, or communication;

        b.    Reading or attempting to read or to learn the contents of any message, report or communication while the same is in transit or passing over any wire line, or cable without the consent of all parties to the message, report or communication;

        c.    Using or attempting to use, in any manner or for any purpose, any information obtained from any message, report or communication read while the same is in transit or passing over any wire line, or cable without the consent of all parties to the message, report or communication; and

        d.    Aiding, agreeing with, employing or conspiring with any person or persons to unlawfully do, or permit, or cause the disclosure, learning, reading, and usage of any communications set by wire in California without the consent of all parties to the message, report or communication.

    48.    In sum, under Section 631 of CIPA ("§ 631"), it is prohibited to aid or permit another person to willfully and without the consent of all parties to a communication, read, attempt to read, or learn the content or meaning of any message, report, or communication, while the same is in transit or passing over any wire, line, or cable, or is being sent from or received at any place within California.

    49.    Using a website and entering information on a website constitutes messages, reports, and/or communications between the website user and website developer, owner and/or operator. Internet

communications pass over a wire, line, or cable. Users' messages, reports, and/or communications on the Websites are thus transmitted and passed over a wire, line, or cable.

50.     Where, as here, a website user or a website developer, owner, or operator is based in California, the message, report, or communication is sent from and/or received in California.

51.     When someone uses a website and enters information on that website, the sole parties to that message, report, or communication are the website user and the website developer, owner, or operator.

52.     It is a violation of § 631 to allow someone other than the website user or website developer, owner, or operator to read or learn the contents of messages, reports, or communications between those parties without the consent of all parties.

53.     It is a violation of § 631 to read, attempt to read, or learn the contents of messages, reports, or communications between website users and developers, owners, or operators without the consent of all parties.

54.     It is a violation of § 631 to use information contained in messages, reports, or communications between website users and developers, owners, or operators without the consent of all parties.

55.     It is a violation of § 631 to aid, agree with, employ, or conspire with another to unlawfully read, learn, or use information contained in messages, reports, or communications between website users and developers, owners, or operators without the consent of all parties.

56.     When someone violates § 631, the aggrieved party may bring a civil action for $5,000 per violation, pursuant to section 637.2(a)(1). Pursuant to section 637.2(b), the aggrieved party may also seek injunctive relief to enjoin and restrain the violative conduct. Pursuant to section 637.2(c), "it is not a necessary prerequisite to an action pursuant to this section that the plaintiff has suffered, or be threatened with, actual damages."

57.     By using Clarity on the Websites, Barnaby, which is based in Concord, California, violated and continues to violate § 631 each time it allows Microsoft to read users' online communications through its Websites, without notifying users, and without obtaining their consent.

58.     Microsoft violated § 631 each time it read, attempted to read, or learned from and/or utilized Barnaby Website users' PPSI without their consent.

59.     Both Defendants violated § 631 by operating under an agreement whereby Barnaby installed Clarity to disclose users' PPSI to Microsoft without their consent, in exchange for access to and the ability to use the PPSI of Plaintiff and other Website users for its own commercial purposes, such as to improve the machine learning models (AI) that power many of its products and services.

**B.     Federal Wiretap Act**

60.     "[T]he Wiretap Act's legislative history evidences Congress's intent to prevent the acquisition of the contents of a message by an unauthorized third-party or 'an unseen auditor.'" *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 608 (9th Cir. 2020) (quoting S. Rep. No. 90-1097, *reprinted in* 1986 U.S.C.C.A.N. 2112, 2154, 2182).

61.     The Federal Wiretap Act prohibits, with specified exceptions, both: (1) the intentional interception of "any wire, oral, or electronic communication," 18 U.S.C. § 2511(1)(a); and (2) the intentional disclosure or use of the contents of any such illegally intercepted communication if the persons who disclose or use it did so "knowing, or having reason to know," the communication was intercepted in violation of the Federal Wiretap Act, *id.* §§ 2511(1)(c), (d).

62.     "Intercept" is defined in the statute as "the aural or other acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device." *Id.* § 2510(4).

63.     Under the Federal Wiretap Act, conduct is intentional when it, or the results thereof, are the person's conscious objective.

64.     One exception to the Act's prohibition against interception of communications is the "one-party consent" rule. *See id.* § 2511(2)(d). Under this exception, interception of a communication by or with the consent of one party to the communication is not unlawful, unless the interception is "for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State." *Id.*

65.     Microsoft violates the Federal Wiretap Act by employing Clarity on the Websites with the conscious objective of intercepting users' private communications, including the PPSI and by using that intercepted information for financial gain in developing and improving its commercial products. Moreover, Microsoft cannot rely on the one party consent rule exception because, although Barnaby consented to

Microsoft's interception, Microsoft's interception was for the purpose of violating Website *users'* right to privacy, and they did not consent.

**C.     Common Law Invasion of Privacy**

66.     "Invasion of privacy has been recognized [in California] as a common law tort for over a century." *Matera v. Google Inc.*, 2016 WL 5339806, at *10 (N.D. Cal. Sept. 23, 2016) (citing Restatement (Second) of Torts §§ 652A-I for the proposition "that the right to privacy was first accepted by an American court in 1905, and 'a right to privacy is now recognized in the great majority of the American jurisdictions that have considered the question'"). "The common law secures to each individual the right of determining, ordinarily, to what extent his thoughts, sentiments, and emotions shall be communicated to others." Samuel D. Warren & Louis Brandeis, *The Right to Privacy*, 4 Harv. L. Rev. 193, 198 (1890).

67.     The Restatement (Second) of Torts recognizes the same privacy rights through its tort of intrusion upon seclusion, explaining that "[o]ne who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy." Restatement (Second) of Torts § 652B (1977). The Supreme Court has similarly recognized the primacy of privacy rights, explaining that the Constitution operates in the shadow of a "right to privacy older than the Bill of Rights." *Griswold v. Connecticut*, 381 U.S. 479, 486 (1965).

68.     Microsoft violates Website users' right to privacy every time it eavesdrops and intercepts users' PPSI and private communications with Barnaby without their knowledge or consent.

**D.     California Constitution**

69.     California amended its constitution in 1972 to specifically enumerate a right to privacy in its first section, and courts have recognized this affords individuals a private right of action for invasions of their privacy. *See* CAL. CONST. ART. I, § 1. The California Supreme Court has recognized the fundamental injuries at stake in privacy violations, explaining:

> [A] measure of personal isolation and personal control over the conditions of its abandonment is of the very essence of personal freedom and dignity . . . . A [person] . . . whose conversations may be overhead at the will of another . . . is less of a [person], has less human dignity, on that account. He who may intrude upon another at will is the master of the other and, in fact, intrusion is a primary weapon of the tyrant.

*Shulman v. Group W Prods., Inc.*, 18 Cal. 4th 200, 231 (1998) (quoting Edward J. Bloustein, *Privacy as an Aspect of Human Dignity: An Answer to Dean Prosser*, 39 N.Y.U. L. REV. 962, 973-74 (1964)); *see also Gill*

*v. Curtis Pub. Co.*, 38 Cal. 2d 273, 276 (1952) ("Recognition has been given of a right of privacy, independent of the common rights to property, contract, reputation and physical integrity . . . . In short, it is the right to be let alone." (internal quotation marks omitted)).

## V.     Plaintiff's Use of Barnaby's Websites

70.     Plaintiff is a consumer who has periodically over the past few years, including since Barnaby installed Clarity, visited, browsed, and purchased adult products from one of Barnaby's Websites, www.goodvibes.com. In doing so, she communicated her PPSI to Barnaby.

71.     Plaintiff's use of the Website constitutes internet messages, reports and/or communications between her and Barnaby, which were transmitted and passed over a wire, line, or cable.

72.     Plaintiff's messages, reports and/or communications were sent from California.

73.     Plaintiff's messages, reports and/or communications were instantly available to Microsoft when Plaintiff entered the Website; everything Plaintiff did on the Website was tracked and disclosed to Microsoft instantly and automatically as it occurred.

74.     Each time Plaintiff used the Website, Barnaby allowed Microsoft to intercept, learn the contents of, and utilize for commercial gain Plaintiff's messages, reports and/or communications. Because Plaintiff's messages, reports and/or communications were intercepted simultaneously as they were being communicated, Microsoft's interception occurred while the messages, reports and/or communications were in transit.

75.     Microsoft is not a party to the messages, reports or communications between Plaintiff and Barnaby.

76.     Plaintiff did not know the messages, reports, or communications between herself and Barnaby would be intercepted by Microsoft.

77.     Plaintiff did not know that her PPSI and MUID would be shared, used, sold, or otherwise disclosed to Microsoft.

78.     Plaintiff did not consent to the messages, reports, or communications between herself and Barnaby being shared with Microsoft.

79.     Plaintiff reasonably believed the messages, reports and/or communications between herself and Barnaby, including the PPSI therein, were private.

**CLASS ACTION ALLEGATIONS**

80.     While reserving the right to redefine or amend the class definitions prior to or as part of a motion seeking class certification, pursuant to Federal Rule of Civil Procedure 23, Plaintiff seeks to represent a class of all persons in the United States who, at any time from four years preceding the date of the filing of this Complaint to the time a class is notified (the "Class Period"), interacted with the Barnaby Websites embedded with Clarity (the "Class"); and a subclass of all persons in California who, at any time during the Class Period, interacted with the Barnaby Websites embedded with Clarity (the "California Subclass").

81.     The members in the proposed Class (including its Subclass) are so numerous that individual joinder of all members is impracticable, and the disposition of the claims of the Class in a single action will provide substantial benefits to the parties and Court.

82.     Questions of law and fact common to Plaintiff and the Class include but are not limited to:

a.      Whether Barnaby collected information about Class Members;

b.      Whether that information constitutes PPSI;

c.      Whether that information constitutes messages, reports, or communications under CIPA § 631;

d.      Whether Barnaby disclosed to Microsoft the PPSI and/or messages, reports or communications between Barnaby and Class Members who accessed the Websites;

e.      Whether Barnaby and Microsoft had an agreement whereby Barnaby installed Clarity to disclose the Class Members' search history and other information in exchange for consideration;

f.      Whether Microsoft read, attempted to read, or learned and/or utilized the information it obtained from Barnaby about Class Members' use of Barnaby's Websites;

g.      Whether Microsoft intentionally intercepted Class Members' wire, oral, or electronic communications;

h.      Whether Microsoft invaded Class Members' privacy by intercepting their PPSI;

i.      How Class Members' messages, reports, communications, and PPSI were disclosed, and to whom; and

j.      Whether Barnaby obtained consent or authorization before disclosing to Microsoft the messages, reports, communications, or PPSI of Class Members.

17

*Tatola v. Barnaby Ltd., LLC et al.*
CLASS ACTION COMPLAINT

83.     These common questions of law and fact predominate over questions that affect only individual members of the Class.

84.     Plaintiff's claims are typical of the Class's claims because they are based on the same underlying facts, events, and circumstances relating to Defendants' conduct. Specifically, all Class Members, including Plaintiff, were subjected to the same violation of privacy, and unfair business practices as a result of using the Websites.

85.     Plaintiff will fairly and adequately represent and protect the interests of the Class, has no interests incompatible with the interests of the Class, and has retained counsel competent and experienced in class action litigation who will vigorously prosecute this action and will otherwise protect and fairly and adequately represent Plaintiff and the Class.

86.     Class treatment is superior to other options for resolution of the controversy because the relief sought for each Class Member is small, such that, absent representative litigation, it would be infeasible for each Class Member to redress the wrongs done to them.

87.     Defendants have acted on grounds applicable to the Class, thereby making appropriate final injunctive and declaratory relief concerning the Class as a whole.

88.     As a result of the foregoing, class treatment is appropriate under Fed. R. Civ. P. 23(a), 23(b)(2), and 23(b)(3).

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION

### Violation of the California Invasion of Privacy Act (CIPA)

### (Against Barnaby and Microsoft on behalf of the California Subclass)

89.     Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if set forth fully herein.

90.     Plaintiff and other California Subclass Members are located in California.

91.     Microsoft is the owner and operator of Clarity, a platform that collects data from websites to create reports that provide insights into a website's business.

92.     Barnaby, through its Websites, is engaged in the business of selling adult products to Plaintiff and other California Subclass Members.

18

93.     Plaintiff and other California Subclass Members used Barnaby's Websites to search for and/or purchase adult products.

94.     Barnaby and Microsoft had an agreement whereby Clarity was installed onto Barnaby's Websites in exchange for access to and use of the PPSI of Plaintiff and other California Subclass Members.

95.     When Plaintiff and other California Subclass Members used the Websites, they were messaging, reporting, and/or communicating with Barnaby. Those messages, reports and/or communications were transmitted or passed over a wire, line, or cable, and were sent and/or received within California.

96.     Barnaby willfully disclosed the messages, reports and/or communications with Microsoft via Clarity. By doing so, Barnaby willfully aided and permitted Microsoft, a third-party, to read and/or learn of the messages, reports, and/or communications between Barnaby and California Subclass Members, including Plaintiff.

97.     Microsoft willfully obtained the messages, reports and/or communications of Plaintiff and other California Subclass Members via Clarity without their knowledge and consent.

98.     Plaintiff and other California Subclass Members were not aware Barnaby was disclosing their messages, reports and/or communications to Microsoft.

99.     Plaintiff and other California Subclass Members did not consent to Barnaby sending or permitting Microsoft to read or learn about the messages, reports, or communications between them and Barnaby.

100.    Microsoft read, attempted to read and/or learned from, and utilized the messages, reports and/or communications of Plaintiff and other California Subclass Members with Barnaby via Clarity, without their knowledge or consent.

101.    Barnaby is liable to Plaintiff and other California Subclass Members for statutory damages of $5,000 for each time it disclosed without consent a message, report, or communication to Microsoft.

102.    Microsoft is liable to Plaintiff and other California Subclass Members for statutory damages of $5,000 for each time it read, learned from, or utilized a Barnaby-originated message, report, or communication without consent.

**SECOND CAUSE OF ACTION**

**Violation of the Federal Wiretap Act, 18 U.S.C. §§ 2510, *et seq*.**

**(Against Microsoft on behalf of the Class)**

103.    Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if set forth fully herein.

104.    The Wiretap Act prohibits the intentional "interception" of "wire, oral, or electronic communications." 18 U.S.C. § 2511(1).

105.    By designing and programming Clarity to contemporaneously monitor, intercept, and transmit the contents of electronic communications that Plaintiff and Class Members sent to Barnaby, including those containing PPSI, Microsoft intentionally intercepted and/or endeavored to intercept the contents of electronic communications, in violation of 18 U.S.C. § 2511(1).

106.    Further, Microsoft intentionally used, or endeavored to use, the contents of such electronic communications while knowing or having reason to know that the data was obtained through the interception of an electronic communication.

107.    Plaintiff and other Class Members did not consent to Microsoft's interception of their private communications with Barnaby. Nor could they have, as they were unaware of Microsoft's interceptions, which occurred concurrently as they used the Websites. Moreover, Microsoft was never a party to any of the communications sent and/or received by Plaintiff and other Class Members.

108.    Plaintiff and the Class suffered harm as a result of Microsoft's violations of the Wiretap Act, and therefore seek (a) preliminary, equitable and declaratory relief as may be appropriate, (b) the sum of the actual damages suffered and the profits obtained by Microsoft as a result of its unlawful conduct, or statutory damages as authorized by 18 U.S.C. § 2520(2)(B), whichever is greater, (c) punitive damages, and (d) reasonable costs and attorneys' fees.

**THIRD CAUSE OF ACTION**

**Intrusion Upon Seclusion**

**(Against Microsoft on behalf of the Class)**

109.    Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if set forth fully herein.

110.    Plaintiff and other Class Members have reasonable expectations of privacy in using the Websites and in their PPSI, generally. The reasonable expectation of privacy in their PPSI is intrinsic and further stems from and is reinforced by representations in the Websites' Privacy Policies and Help Pages.

111.    Members of the public also have a reasonable expectation that their PPSI will not be captured by Microsoft without their consent and subsequently used for Microsoft's economic gain.

112.    Microsoft's intrusions by viewing and utilizing for economic gain Class Members' PPSI, are highly offensive to a reasonable person. This is evidenced by, *inter alia*, Barnaby taking efforts to assure Website users their PPSI will not be shared. It is also self-evident from the highly personal and protected nature of the information being taken and utilized without consent, including users' sexual orientation.

113.    Plaintiff, other Class Members, and the public were harmed by the intrusion by Microsoft into their private affairs as detailed throughout this Complaint. Microsoft's actions and conduct complained of herein were a substantial factor in causing the harm suffered by Plaintiff, other Class Members, and the general public.

114.    As a result, Plaintiff and Class Members seek injunctive relief prohibiting any further intrusions into their privacy by Microsoft, the destruction of any information obtained as a result of its past intrusions, and damages in a sum to be determined at trial.

**FOURTH CAUSE OF ACTION**

**Violation of California's Constitutional Right to Privacy, Cal. Const. Art. 1, § 1**

**(Against Microsoft on behalf of the California Subclass)**

115.    Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if set forth fully herein.

116.    Plaintiff and other California Subclass Members' private affairs include their PPSI that Microsoft captures from eavesdropping on Plaintiff and California Subclass Members' private communications with Barnaby.

117.    Microsoft intentionally intruded on and into Plaintiff's and other California Subclass Members' private affairs by intentionally capturing their PPSI as described herein. These intrusions are highly offensive to a reasonable person.

118.     Societal expectations and laws created a duty that Microsoft owed to Plaintiff and other California Subclass Members, to protect and respect their privacy. Microsoft breached that duty by implementing a system that eavesdrops on private communications and captures the PPSI of Plaintiff and other California Subclass Members without their consent, and without legitimate justification, as described herein.

119.     Microsoft's conduct described herein violated Plaintiff's and other California Subclass Members' right to privacy, as guaranteed by ART. 1, § 1 of the California Constitution. Microsoft's actions and conduct complained of herein were a substantial factor in causing the harm suffered by Plaintiff and other California Subclass Members.

120.     As a result, Plaintiff and Class Members seek injunctive relief prohibiting any further intrusions into their privacy by Microsoft, destruction of any information obtained as a result of its past intrusions, and damages in a sum to be determined at trial.

**FIFTH CAUSE OF ACTION**

**Violation of the California Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.***

**(Against Barnaby and Microsoft on Behalf of the California Subclass)**

121.     Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if set forth fully herein.

122.     The UCL prohibits any "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200.

123.     The acts, omissions, practices, and non-disclosures of Defendants alleged herein constitute business acts and practices.

124.     The acts of Defendants alleged herein are "unlawful" under the UCL in that, as alleged herein, they violate at least California's Invasion of Privacy Act. The acts of Barnaby alleged herein further constitute negligence, and the acts of Microsoft alleged herein further constitute intrusions upon seclusion, violations of the Federal Wiretap Act and California Constitution, and unjust enrichment.

125.     Plaintiff reserves the right to allege other violations of law that constitute other unlawful business acts or practices.

126.    Defendants' conduct was unfair because it was immoral, unethical, unscrupulous, or substantially injurious to consumers, and the utility of its conduct, if any, did not outweigh the gravity of the harm to its consumers.

127.    Defendants' conduct was also unfair because it violates public policy as declared by specific constitutional, statutory or regulatory provisions, including but not necessarily limited to California's Constitution and Invasion of Privacy Act.

128.    Defendants' conduct was also unfair because the consumer injury was substantial, not outweighed by benefits to consumers or competition, and not one consumers themselves could reasonably have avoided.

129.    There were reasonably available alternatives to further Defendants' legitimate business interests, other than the conduct described herein.

130.    Defendants profited from, and Plaintiff and other California Subclass Members suffered injury in fact and lost money as a result of Defendants' unlawful and unfair conduct.

131.    In accordance with Bus. & Prof. Code § 17203, Plaintiff seeks an order enjoining Defendants from continuing to conduct business through unlawful and/or unfair acts and practices.

132.    Plaintiff and the California Subclass also seek an order for the restitution of all monies Defendants unjustly acquired through acts of unlawful competition.

**SIXTH CAUSE OF ACTION**

**Unjust Enrichment**

**(Against Microsoft on behalf of the Class)**

133.    Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if set forth fully herein.

134.    Plaintiff and the Class conferred an economic benefit on Microsoft in the form of profits resulting from the utilization of Plaintiff and Class Members' PPSI to gain marketing insights and improve machine learning models (AI) that power many of its products and services.

135.    Microsoft's financial benefits resulting from its unlawful and inequitable conduct are economically traceable to Plaintiff's and Class Members' PPSI being obtained without their consent. Plaintiff and other Class Members have been injured because they have not been compensated for the benefits they

conferred on Microsoft. Plaintiff and other Class Members' legal remedies are inadequate to address this injury.

136.    It would be inequitable, unconscionable, and unjust for Microsoft to be permitted to retain these economic benefits because the benefits were procured as a direct and proximate result of its wrongful conduct.

137.    As a result, Plaintiff and other Class Members are entitled to equitable relief including restitution and/or disgorgement of all revenues, earnings, profits, compensation, and benefits which may have been obtained by Microsoft as a result of such business practices.

**SEVENTH CAUSE OF ACTION**

**Negligence**

**(Against Barnaby on behalf of the Class)**

138.    Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if set forth fully herein.

139.    Barnaby owed Plaintiff and other Class Members a duty of care. In violation of that duty, Barnaby negligently, carelessly, recklessly and/or unlawfully transmitted to and permitted Microsoft to access Plaintiff and other Class Members' PPSI.

140.    As a direct and legal result of Barnaby's wrongful conduct and omissions, Plaintiff and other Class Members have sustained damages in a sum to be determined at trial.

**<u>PRAYER FOR RELIEF</u>**

141.    Wherefore, Plaintiff, individually and on behalf of the proposed Class, prays for judgment as follows:

   a.    An Order declaring this action to be a proper class action, appointing Plaintiff as Class Representative, and appointing Plaintiff's undersigned counsel as Class Counsel;

   b.    An Order requiring Defendants to bear the cost of Class Notice;

   c.    An Order requiring Defendants to disgorge all monies, revenues, and profits obtained by means of any wrongful act or practice;

   d.    An Order requiring Defendants to pay restitution to restore all funds acquired by means of any act or practice declared by this Court to be an unlawful or unfair business act or practice;

e.      An Order requiring Defendants to pay statutory, compensatory and punitive damages as permitted by law;

f.      An Order enjoining Microsoft from intercepting, learning the contents of, and profiting from private communications between Barnaby and users of its Websites without the users' consent;

g.      An Order enjoining Barnaby from allowing Microsoft to intercept, learn the contents of, and profit from private communications between Barnaby and users of its Websites without the users' consent;

h.      An Order compelling Microsoft's destruction of all data obtained from communications between Barnaby and the Class without Class Members' consent;

i.      A judgment awarding any and all further equitable, injunctive, and declaratory relief as may be appropriate;

j.      Pre- and post-judgment interest, as permitted by law;

k.      An award of attorney fees and costs; and

l.      Such further relief as the Court deems necessary, just, or proper.

## JURY DEMAND

142.   Plaintiff hereby demands a trial by jury on all issues so triable.


Dated: June 25, 2024               /s/ Melanie R. Monroe

**FITZGERALD MONROE FLYNN PC**
JACK FITZGERALD
*jfitzgerald@fmfpc.com*
MELANIE R. MONROE
*mmonroe@fmfpc.com*
TREVOR FLYNN
*tflynn@fmfpc.com*
CAROLINE S. EMHARDT
*cemhardt@fmfpc.com*
PETER GRAZUL
*pgrazul@fmfpc.com*
2341 Jefferson Street, Suite 200
San Diego, California 92110
Phone: (619) 215-1741
***Counsel for Plaintiff***

25