**FITZGERALD MONROE FLYNN PC**
JACK FITZGERALD (SBN 257370)
*jfitzgerald@fmfpc.com*
MELANIE R. MONROE (SBN 275423)
*mmonroe@fmfpc.com*
TREVOR FLYNN (SBN 253362)
*tflynn@fmfpc.com*
PETER GRAZUL (SBN 342735)
*pgrazul@fmfpc.com*
2341 Jefferson Street, Suite 200
San Diego, California 92110
Phone: (619) 215-1471
Fax: (619) 331-2943
***Counsel for Plaintiff***

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

STELLA TATOLA, on behalf of herself, those similarly situated, and the general public,

Plaintiff,

v.

BARNABY LTD., LLC, and MICROSOFT CORPORATION,

Defendants.

Case No. 3:24-cv-03789-JD

**PLAINTIFF'S OPPOSITION TO MICROSOFT'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT [DKT. NO. 29]**

Judge: Hon. James Donato
Date: October 24, 2024
Time: 10:00 a.m.
Courtroom: 11

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .......... ii

INTRODUCTION .......... 1

ARGUMENT .......... 1

I. PLAINTIFF HAS ARTICLE III STANDING .......... 1

A. Plaintiff Alleges Injury to Traditional Privacy Interests .......... 1

B. Plaintiff Alleges Economic Injuries .......... 3

II. PLAINTIFF'S FAC PLAUSIBLY STATES CLAIMS .......... 5

A. Plaintiff Plausibly Alleges Violations of CIPA by Microsoft .......... 5

B. Plaintiff Plausibly Alleges Violations of the Federal Wiretap Act by Microsoft .......... 8

C. Plaintiff Plausibly Alleges an Invasion of Her Privacy by Microsoft .......... 10

D. Plaintiff Plausibly Alleges Violations of the UCL by Microsoft .......... 13

E. Plaintiff Plausibly Alleges a Claim for Unjust Enrichment Against Microsoft .......... 14

III. PLAINTIFF HAS STANDING TO SEEK INJUNCTIVE RELIEF .......... 14

CONCLUSION .......... 15

# TABLE OF AUTHORITIES

**Cases**

*Ahringer v. LoanDepot, Inc.*,
2024 WL 1135683 (C.D. Cal. Feb. 6, 2024) ....... 5, 8

*Bloch v. Ribar*,
156 F.3d 673 (6th Cir. 1998) ....... 1

*Brown v. Google LLC*,
525 F. Supp. 3d 1049 (N.D. Cal. 2021) ....... 9, 11, 12, 13

*Brown v. Google LLC*,
685 F. Supp. 3d 909 (N.D. Cal. 2023) ....... 13

*Byars v. Goodyear Tire & Rubber Co.*,
654 F. Supp. 3d 1020 (C.D. Cal. 2023) ....... 7

*Calhoun v. Google LLC*,
526 F. Supp. 3d 605 (N.D. Cal. 2021) ....... 13

*Cousin v. Sharp Healthcare*,
681 F. Supp. 3d 1117 (S.D. Cal. 2023) ....... 13

*Cousin v. Sharp Healthcare*,
702 F. Supp. 3d 967 (S.D. Cal. 2023) ....... 6, 7, 10, 13

*Doe v. Eating Recovery Ctr. LLC*,
2024 WL 2852210 (N.D. Cal. June 4, 2024) ....... 8

*Doe v. Microsoft Corp.*,
2023 WL 8780879 (W.D. Wash. Dec. 19, 2023) ....... 13

*ESG Capital Partners, LP v. Stratos*,
828 F.3d 1023 (9th Cir. 2016) ....... 14

*Esparza v. Kohl's, Inc.*,
2024 WL 1152732 (S.D. Cal. Mar. 18, 2024) ....... 5

*Frasco v. Flo Health, Inc.*,
2022 WL 21794391 (N.D. Cal. June 6, 2022) ....... 13

*Friedman v. MedJet Assistance, LLC*,
2010 WL 11463109 (C.D. Cal. May 13, 2010) ....... 7

*Galaria v. Nationwide Mut. Ins. Co.*,
663 F. App'x 384 (6th Cir. 2016) ....... 15

*Gibson v. Planned Parenthood Fed'n of Am., Inc.*,
2024 WL 4251892 (N.D. Cal. July 2, 2024) ........ 8

*Griswold v. Conn.*,
381 U.S. 479 (1965) ........ 1

*Hammerling v. Google LLC*,
615 F. Supp. 3d 1069 (N.D. Cal. 2022) ........ 12, 13

*Hazel v. Prudential Fin., Inc.*,
2023 WL 3933073 (N.D. Cal. June 9, 2023) ........ 8

*Hernandez v. Hillsides, Inc.*,
47 Cal. 4th 272 (2009) ........ 10

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) ........ 6, 10, 11

*In re Google Assistant Privacy Litig.*,
457 F. Supp. 3d 797 (N.D. Cal. 2020) ........ 10

*In re Google Inc. Cookie Placement Consumer Priv. Litig.*,
806 F.3d 125 (3d Cir. 2015) ........ 13

*In re Marriott Int'l, Inc., Cust. Data Sec. Breach Litig.*,
440 F. Supp. 3d 447 (D. Md. 2020) ........ 14

*In re Meta Pixel Tax Filing Cases*,
2024 WL 1251350 (N.D. Cal. Mar. 25, 2024) ........ 14, 15

*In re Nickelodeon Consumer Priv. Litig.*,
827 F.3d 262 (3d Cir. 2016) ........ 11, 12

*In re Toys R Us, Inc., Priv. Litig.*,
2001 WL 34517252 (N.D. Cal. Oct. 9, 2001) ........ 9

*In re Zynga Privacy Litig.*,
750 F.3d 1098 (9th Cir. 2014) ........ 5, 6

*James v. Walt Disney Co.*,
701 F. Supp. 3d 942 (N.D. Cal. 2023) ........ 7

*Ji v. Naver Corp.*,
2022 WL 4624898 (N.D. Cal. Sept. 30, 2022) ........ 4

*Johnson v. Trumpet Behav. Health, LLC*,
2022 WL 74163 (N.D. Cal. Jan. 7, 2022) ........ 14

*Krystofiak v. BellRing Brands, Inc.*,
2024 WL 3012801 (N.D. Cal. June 14, 2024) .......... 14

*Kwikset Corp. v. Super. Ct.*,
51 Cal. 4th 310 (2011) .......... 13

*McDonald v. Kiloo ApS*,
385 F. Supp. 3d 1022 (N.D. Cal. 2019) .......... 12

*Mirkarimi v. Nev. Prop. 1 LLC*,
2013 WL 3761530 (S.D. Cal. July 15, 2013) .......... 10

*Planned Parenthood Fed'n of Am., Inc., v. Ctr. for Med. Progress*,
214 F. Supp. 3d 808 (N.D. Cal. 2016) .......... 9

*Price v. Carnival Corp.*,
712 F. Supp. 3d 1347 (S.D. Cal. Jan. 19, 2024) .......... 5, 6, 7

*Rabin v. Google LLC*,
2024 WL 1269313 (N.D. Cal. Mar. 26, 2024 .......... 15

*Roman Catholic Bishop v. Super. Ct.*,
42 Cal. App. 4th 1556 (1996) .......... 1

*Saeedy v. Microsoft Corp.*,
2023 WL 8828852 (W.D. Wash. Dec. 21, 2023) .......... 3, 4

*Saleh v. Nike, Inc.*,
562 F. Supp. 3d 503 (C.D. Cal. 2021) .......... 5, 6

*Shapiro v. AT&T Mobility, LLC*,
2020 WL 11763591 (C.D. Cal. Dec. 23, 2020) .......... 10

*Sinatro v. Welch Foods Inc.*,
2023 WL 3590681 (N.D. Cal. May 22, 2023) .......... 14

*Sonner v. Premier Nutrition Corp.*,
971 F.3d 834 (9th Cir. 2020) .......... 14, 15

*Sussman v. Am. Broad. Cos., Inc.*,
186 F.3d 1200 (9th Cir. 1999) .......... 9

*Tanner v. Acushnet Co.*,
2023 WL 8152104 (C.D. Cal. Nov. 20, 2023) .......... 6

*Toy v. Life Line Screening of Am. Ltd.*,
2024 WL 1701263 (N.D. Cal. Mar. 19, 2024) .......... 15

*Videckis v. Pepperdine Univ.*,
100 F. Supp. 3d 927 (C.D. Cal. 2015) ........ 11

*Weizman v. Talkspace, Inc.*,
705 F. Supp. 3d 984 (N.D. Cal. 2023) ........ 14

*Yoon v. Lululemon USA, Inc.*,
549 F. Supp. 3d 1073 (C.D. Cal. 2021) ........ 8

**Statutes**

18 U.S.C. § 2510(8) ........ 5

18 U.S.C. § 2511(2)(d) ........ 9

Cal. Bus. & Prof. Code § 17204 ........ 13

Cal. Penal Code § 631(a) ........ 5

Cal. Penal Code §§ 637.2 *et. seq*. ........ 4

**INTRODUCTION**

Microsoft's Motion to Dismiss, Dkt. No. 29 ("Microsoft Mot.") provides no salient reason to dismiss Plaintiff's claims. Plaintiff has Article III standing because she alleges Defendants captured and invaded information revealing her sexual preferences, which is private and historically protected. Plaintiff also alleges economic injuries sufficient to confer standing. Plaintiff states viable claims against Microsoft under CIPA, the Federal Wiretap Act, and the Unfair Competition Law, as well as for Invasion of Privacy and Unjust Enrichment. Finally, because Plaintiff alleged Defendants' violations are ongoing, and she is subject to future injury, she has standing to seek prospective injunctive relief. Accordingly, the Court should deny Microsoft's motion.

**ARGUMENT**

**I. PLAINTIFF HAS ARTICLE III STANDING**

Plaintiff alleges Microsoft's wrongful behavior caused her both a concrete dignitary injury—the invasion of her privacy—and an economic injury in the form of lost money from uncompensated financial advantages bestowed upon them. Both give her standing to pursue her claims.

**A. Plaintiff Alleges Injury to Traditional Privacy Interests**

"Privacy is a fundamental liberty implicitly guaranteed by the federal Constitution and is explicitly guaranteed under the California Constitution as an inalienable right." *Roman Catholic Bishop v. Super. Ct.*, 42 Cal. App. 4th 1556, 1567 (1996) (internal citation omitted) (citing *Griswold v. Conn.*, 381 U.S. 479, 484-86 (1965); Cal. Const., art. I, § 1). "The right encompasses privacy in one's sexual matters . . . ." *Id.* This is because decisions and activities related to human sexuality are among the most private aspects of a person's life. *See Bloch v. Ribar*, 156 F.3d 673, 685-86 (6th Cir. 1998). Here, Plaintiff alleges that "since Barnaby installed [Microsoft's] trackers," she has "periodically . . . visited, browsed, *and purchased adult products* from one of Barnaby's Websites[.]" FAC ¶ 74 (emphasis added).

"When consumers browse the Websites to shop for and purchase adult products, sex toys, lingerie, and other similar items . . . they communicate private and extremely personal information to Barnaby," including "sexual preferences, sexual orientation, sexual practices, and adult product preferences (collectively 'Private and Protected Sexual Information' or 'PPSI')." FAC ¶ 12; *see also id.* ¶¶ 13-14 (alleging how merely browsing the Websites can reveal sensitive sexual information). Thus, when "visit[ing],

brows[ing], and purchas[ing] adult products from" Barnaby, Plaintiff "communicated her PPSI to Barnaby." *Id.* ¶ 74. "Each time Plaintiff used the Website, Barnaby allowed Microsoft to intercept, learn the contents of, and utilize for commercial gain [her] messages, reports and/or communications." *Id.* ¶ 78. "Plaintiff did not know that her PPSI . . . would be shared, used, sold, or otherwise disclosed to Microsoft," *id.* ¶ 81, did not consent to it, *id.* ¶ 82, and "reasonably believed" her "PPSI . . . w[as] private," *id.* ¶ 83.

"[A] Machine Unique Identifier ('MUID') is a unique identifier generated by Microsoft and assigned to a specific user to track the user's activity across the internet, and Microsoft . . . employs the use of MUID cookies to '[i]dentif[y] unique web browsers visiting Microsoft sites.'" *Id.* ¶ 24 (quotation omitted). A "MUID is unique to each user and can be used to identify individuals." *Id.* ¶ 29. Microsoft's "MUID is persistent throughout both [Barnaby] Websites." *Id.* "[T]he consistent transmission of each user's communications associated with a unique MUID, enables Microsoft to identify the person who has communicated with Barnaby through the Websites and thus to connect a Website user's PPSI to their identity." *Id.* ¶ 46. For example, when Plaintiff "purchased adult products from one of Barnaby's Websites," *id.* ¶ 74, she necessarily had to (and did) "keystroke" her name, home address, email address, telephone number, and credit card information.[1] Once she did that, her personally identifying information was forever linked with her MUID, and thus her browsing behavior. *See id.* ¶ 46.

Microsoft cannot genuinely dispute Plaintiff has a reasonable expectation of privacy in matters relating to her sexuality, so it contests her allegations that she communicated her PPSI at all, claiming the FAC fails to allege her information was identifiable and not "anonymized." *See* Microsoft Mot. at 5 (asserting Plaintiff "does not allege any collection of her individually identifiable information by Microsoft"). As explained above, that mischaracterizes the FAC. Microsoft also minimizes the FAC when it argues "Plaintiff cannot establish Article III standing" because "the collection of online shopping data does not implicate a

[1] Although not alleged expressly, this is a reasonable inference from the allegation that Plaintiff "purchased adult products from one of Barnaby's Websites," FAC ¶ 74, because that is a prerequisite for doing so. Microsoft nevertheless complains Plaintiff's "allegations are too vague to identify any information Microsoft collected about her that could implicate a traditional privacy interest," Microsoft Mot. at 8. If necessary, Plaintiff could amend to add allegations of this personally identifying information she provided when she "purchased adult products" from Barnaby. She could also allege the specific (multiple) products she purchased, and dates of purchase, but that would require her to disclose PPSI that the federal and California constitutions scrupulously protect.

privacy interest sufficient to create Article III standing." *Id.* at 6. Plaintiff is not merely complaining that Barnaby let Microsoft intercept her "mouse movements, clicks, keystrokes, keywords, URLs of web pages visited, product preferences, interactions on a website, search words typed into a search bar, user/device identifiers, anonymized data, product selections added to a shopping cart, and website browsing activities," *id.* (quoting *Saeedy v. Microsoft Corp.*, 2023 WL 8828852, at *4 (W.D. Wash. Dec. 21, 2023)); *see also id.* at 7 ("clicks and keystrokes on a public commercial website cannot give rise to a privacy injury sufficient for Article III standing"). She is complaining that because Barnaby's Websites pervasively involve information about human sexuality, by letting Microsoft intercept her browsing sessions, her "private and extremely personal" PPSI—which Barnaby promised to protect—was transmitted without her consent. *See* FAC ¶ 12. For example, even "[s]electing among [various product] categories reveals preferences and practices and has the capacity and tendency to reveal users' sexual orientation." *Id.* ¶ 13. "The Website's home pages also feature articles on various sex-related topics . . . which would, if a user browses that information, further reveal PPSI of the user." *Id.* ¶ 14.

Finally, Defendants each contest traceability by pointing the finger at the other as the real tortfeasor. *See* Microsoft Mot. at 9 ("[E]ven if [Plaintiff] had" alleged "collection of any personally identifiable data by Microsoft . . . that injury would not be due to any action by Microsoft but instead due to the discretionary choices of the website operator."); Barnaby Mot. at 5 ("[W]hile Plaintiff attempts to allege that Microsoft intruded upon her privacy, she does not assert similar claims against Barnaby."). As alleged in the Complaint, however, it is the combination of improper behavior by both entities that has permitted the invasions of privacy Plaintiff alleges. Barnaby could not have transmitted Plaintiff's PPSI without Microsoft's tracking technology and willingness to receive it, and Microsoft could not have obtained Plaintiff's PPSI without Barnaby's willingness to give it up, in violation of its promises.

### B. Plaintiff Alleges Economic Injuries

Plaintiff alleges "Microsoft intentionally intercepts users' PPSI with the intent to use it for financial gain through better targeting of advertisements to those users and others, and through improvements to the machine learning models (AI) that power many of its products and services." FAC ¶ 49; *see also id.* ¶ 30 ("Microsoft uses the information it obtains . . . to improve its advertising targeting services" and "directly profits from improved targeting of advertisements in the form of increased payments from advertisers.").

Plaintiff thus alleges she "and the Class conferred an economic benefit on Microsoft in the form of profits resulting from the utilization of [their] PPSI . . . ." *Id.* ¶ 138; *see also id.* ¶ 139 ("Microsoft's financial benefits resulting from its unlawful and inequitable conduct are economically traceable to Plaintiff's and Class Members' PPSI being obtained without their consent."). She also alleges she "lost money as a result of Defendants' unlawful and unfair conduct." FAC ¶ 134. This establishes an economic injury for standing.

Microsoft argues that, to establish an injury-in-fact based on the allegations in her complaint, she "'must'—but does not—'allege the existence of a market for [her] data and the impairment of the ability to participate in that market.'" Microsoft Mot. at 8 (quoting *Ji v. Naver Corp.*, 2022 WL 4624898, at *9 (N.D. Cal. Sept. 30, 2022), and citing *Saeedy*, 2023 WL 8828852, at *6). The plaintiffs in the cases it cites, however, both asserted *diminution in value* claims regarding their personally-identifiable information. *See Ji*, 2022 WL 4624898, at *9 ("Plaintiffs claim a 'diminution of the value of their private and personally-identifiable information' as part of the basis for their [False Advertising Law] claim"); *Saeedy*, 2023 WL 8828852, at *6 ("Plaintiffs claim . . . they have suffered harm in the form of diminution of the value of their private data by Microsoft's theft or unfair and deceptive trade practices."). Because Plaintiff asserts different damages theories and models, Microsoft's reliance on these cases is misplaced.[2] Even if their standard applied, though, Plaintiff satisfies it. She alleges there is a market for her data because "Microsoft uses the information it obtains . . . to improve its advertising targeting services," and "directly profits from improved targeting of advertisements," FAC ¶ 30; *see also id.* ¶ 49 ("Microsoft intentionally intercepts users' PPSI with the intent to use it for financial gain . . . ."). Plaintiff also alleges the impairment of her ability to participate in that market by alleging that Barnaby falsely promised to keep her information private, and that she did not consent to Microsoft's commercialization of the information. *See id.* ¶¶ 39, 43, 47, 81-82.

---

[2] Plaintiff's Initial Disclosures set forth the following potential damages models: (i) statutory damages under Cal. Penal Code §§ 637.2 *et. seq*.; (ii) the revenues, earnings, profits, compensation, and benefits which have been obtained by Defendants as a result of Defendants' challenged business practices; (iii) the revenues, earnings, profits, compensation, and benefits which would not have been obtained by Defendants had class members known that tracking and data sharing was taking place; (iv) the cost of locating and permanently deleting Plaintiff and class members' unlawfully collected data and implementing protections against further data collection; (v) the value to Plaintiff and class members of having their rights and interests violated by Defendants' challenged business practices; (vi) the difference in value to class members of a product purchased while tracking and data sharing is taking place and while no tracking or data sharing is taking place; and (vii) actual damages as measured by any reliable, permissible method.

## II. PLAINTIFF'S FAC PLAUSIBLY STATES CLAIMS

### A. Plaintiff Plausibly Alleges Violations of CIPA by Microsoft

Plaintiff alleges Microsoft violates CIPA § 631(a), which make liable any person, *inter alia*:

> [2] who willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within this state; or
>
> [3] who uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained[.]

*See Ahringer v. LoanDepot, Inc.*, 2024 WL 1135683, at *2 (C.D. Cal. Feb. 6, 2024) (quoting Cal. Penal Code § 631(a)); *see also* FAC ¶ 51 (citing Cal. Penal Code § 631(a)); *id.* ¶ 62 ("Microsoft violated § 631 each time it read, attempted to read, or learned from and/or utilized Barnaby Website users' PPSI without their consent."); *id.* ¶¶ 93-106. Defendants argue Plaintiff's CIPA claims "fail[] for two reasons": (1) "Plaintiff fails to allege the collection of any communication or its contents," Microsoft Mot. at 10, and (2) Plaintiff "did not allege Microsoft attempted to 'read' her communications 'while . . . in transit,'" *id.* at 11 (quotation omitted); *see also* Barnaby Mot. at 13-15. Defendants are wrong on both points.

"[T]he term 'contents' refers to the intended message conveyed by the communication, and does not include record information regarding the characteristics of the message that is generated in the course of the communication." *Saleh v. Nike, Inc.*, 562 F. Supp. 3d 503, 517 (C.D. Cal. 2021) (quoting *In re Zynga Privacy Litig.*, 750 F.3d 1098, 1107 (9th Cir. 2014) ["*Zynga*"]); *see also Price v. Carnival Corp.*, 712 F. Supp. 3d 1347, 1360 (S.D. Cal. Jan. 19, 2024) ("'Contents' means 'information concerning the substance, purport, or meaning of [a] communication.'" (quoting 18 U.S.C. § 2510(8))).[3] While content generally "does not include 'record information,' such as the name, address, and subscriber number or identity of a subscriber or customer, when such information is merely 'generated in the course of the communication,'" "record information may constitute 'contents' where 'the record is the subject of a communication . . . .'" *Price*, 712 F. Supp. 3d at 1360 (cleaned up) (quoting *Zynga*, 750 F.3d at 1107).[4]

---

[3] "Courts analyzing CIPA claims apply the same definitions for the federal Wiretap Act," *Esparza v. Kohl's, Inc.*, 2024 WL 1152732, at *5 (S.D. Cal. Mar. 18, 2024) (citing *Saleh*, 562 F. Supp. 3d at 517).

[4] Although Microsoft cites *Zynga* to argue that "[c]licking on a link to view or purchase a product or travel to a new webpage is merely record information," Microsoft Mot. at 10, "*Zynga* expressly left open the possibility that transmission of electronic data such as URLs could amount to the conveyance of the content

Plaintiff alleges "Clarity . . . permits website owners to track visitors' actions by providing 'Recordings in Real Time' so that website owners can 'view[ ] live recordings that recreate user interactions with [their] website/app," including "mouse movements, clicks/taps, scrolls, [and] navigation," FAC ¶ 22, "any text used in the search bar on the Websites," *id.* ¶ 34, "when a user selects a specific product for viewing . . . the page of the specific item selected," *id.* ¶ 35, "when a user adds a product to the cart," what that product is, *id.* ¶ 36, and "when a user initiates check out and makes a purchase," what that purchase entails, *id.* ¶ 37. Further, because Clarity records users' sessions in real time, including all keystrokes, it also records users' purchase information, including credit card information. *See id.* ¶ 34, 37. And because all keystrokes are recorded, this includes information entered, even if not submitted. Due to the nature of Barnaby's Websites, this reveals sexual "preferences. . . orientation . . . practices, and adult product preferences," *id.* ¶ 12; *see also id.* ¶¶ 13-14. "Although perhaps not all of this information is 'content' under CIPA, much of what is captured certainly is and the allegations are more than sufficient for pleading purposes." *See Tanner v. Acushnet Co.*, 2023 WL 8152104, at *3 (C.D. Cal. Nov. 20, 2023) (discussing "mouse movements, clicks, scrolls, zooms, window resizes, keystrokes, text entry, search terms, requests to view product information, and information entered into form fields and text boxes" (citing *Saleh*, 562 F. Supp. 3d at 517-18 ("mouse movements, clicks, typing, scrolling, swiping, tapping, keystrokes, geographic location, IP addresses, and data entry . . . alongside a video capturing . . . keystrokes and mouse clicks" "content" at pleading stage))).

In *Price*, another case involving Microsoft Clarity, the court reached the same conclusion. *See* 712 F. Supp. 3d at 1360-61. There the "[p]laintiffs . . . alleged that '[t]he data and information intercepted by the Session Replay Code . . . includ[ed], *inter alia*, Plaintiffs' location, intent to travel, dates of travel, travel locations as well as other personal data requested to book travel plans such as passport number, driver's license number, date of birth, home address, phone number, email address and/or payment information." *Id.*

---

of a communication: 'Under some circumstances, a user's request to a search engine for specific information could constitute a communication such that divulging a URL containing that search term to a third party could amount to disclosure of the contents of a communication.'" *Cousin v. Sharp Healthcare*, 702 F. Supp. 3d 967, 976 (S.D. Cal. 2023) ["*Cousin II*"] (quoting *Zynga*, 750 F.3d at 1108-109). Thus, "in *In re Facebook*, the Ninth Circuit explained that search 'terms and the resulting URLs could divulge a user's personal interests, queries, and habits on third-party websites,'" *id.* (quoting *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 605 (9th Cir. 2020) ["*In re Facebook*"]). Accordingly, "when [URLs] reproduce a person's personal search engine queries, they are contents." *Id.* (citations omitted)).

at 1361 (record citation omitted). Because much of this information "was 'entered into an information field or text box' provided by Carnival's website," the court found the plaintiffs had "alleged the capture of personally identifiable information that is the subject of the communication, and thus Plaintiffs have sufficiently alleged the interception of 'contents.'" *Id.* Here too, consumers' purchase details are recorded, including name, email address, home address, phone number, and credit card information.[5] This, along with "any text used in the search bar on the Websites," FAC ¶ 34, is "entered into an information field or text box' provided by [Barnaby's] website[s]," and so is "content" within the meaning of CIPA. *See Price*, 712 F. Supp. 3d at 1361; *see also Cousin II*, 702 F. Supp. 3d at 976 (denying motion to dismiss CIPA claims where "[p]laintiffs allege[d] that their data included personal search queries—such as specialty healthcare providers and treatments for medical conditions—and therefore plausibly conveyed content: their [protected health information]" (citations omitted)); *James v. Walt Disney Co.*, 701 F. Supp. 3d 942, 956 (N.D. Cal. 2023) ("To the extent Disney asserts Plaintiffs must have more specificity in their complaint to show that record information is not at issue, Plaintiffs have met that threshold" by "alleg[ing] that Oracle intercepted, *e.g.*, information about the webpages they viewed and searches they conducted."), *motion to certify appeal denied*, 2024 WL 664811 (N.D. Cal. Feb. 16, 2024).

In a footnote, Microsoft argues Plaintiff cannot rely on the recording of searches to demonstrate "content" within the meaning of CIPA because Plaintiff "does not allege she searched for any products on the Websites . . . or any terms she put into the search bar." Microsoft Mot. at 10 n.5. Microsoft is mistaken. The FAC alleges "Plaintiff . . . used Barnaby's Website[] to search for . . . adult products." FAC ¶ 97. She also made purchases from www.goodvibes.com, *id.* ¶ 74, which necessitated further communications. "[T]here is no requirement that [Plaintiff] specifically allege the exact contents of her communications with [Barnaby]. Rather, [Plaintiff] merely needs to show that the contents were not record information," *see Byars v. Goodyear Tire & Rubber Co.*, 654 F. Supp. 3d 1020, 1027 (C.D. Cal. 2023), which she has done. *See also James*, 701 F. Supp. 3d at 956 ("to the extent Disney suggests Plaintiffs must plead the exact communications they had with the ESPN.com website, other courts have rejected that position" (citation omitted)); *Gibson v.*

[5] *See* http://www.goodvibes.com/purchase. Because Plaintiff's FAC extensively references Barnaby's Websites, which are central to her claims, they are incorporated by reference and can be considered by the Court. *See Friedman v. MedJet Assistance, LLC*, 2010 WL 11463109, at *4 (C.D. Cal. May 13, 2010).

*Planned Parenthood Fed'n of Am., Inc.*, 2024 WL 4251892, at *2 (N.D. Cal. July 2, 2024) (Donato, J.) ("Section 631 does not require the communication to include medical or confidential information. The fact of unauthorized access alone is enough to state a claim." (citing, *inter alia*, *Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1082 (C.D. Cal. 2021) (reading § 631 to protect "the internal, user-generated material of a message," regardless of confidentiality)). If the Court nevertheless finds Plaintiff's allegation that she "used Barnaby's Website[] to search for . . . adult products," FAC ¶ 97, inadequate, she could amend the Complaint to add multiple examples of specific search terms she inputted in www.goodvibes.com's search bar, including specific adult products she which she was searching. But this would disclose her PPSI.

Microsoft's second argument—that Plaintiff does not allege it attempted to read her communications while in transit, *see* Microsoft Mot. at 11-12—is unavailing. Plaintiff alleges "everything [she] did on the Website was tracked and disclosed to Microsoft instantly and automatically as it occurred." FAC ¶ 77; *see also id.* ¶¶ 31, 33, 35. "Because Plaintiff's messages, reports and/or communications were intercepted simultaneously as they were being communicated, Microsoft's interception occurred while the messages, reports and/or communications were in transit." *Id.* ¶ 78. "Based on these allegations, [Plaintiff] has sufficiently pled that [Microsoft] intercepted her communications 'in transit' as required under § 631(a)." *See Doe v. Eating Recovery Ctr. LLC*, 2024 WL 2852210, at *1 (N.D. Cal. June 4, 2024) (rejecting argument that plaintiff "failed to allege that Meta intercepted communications 'in transit'" where "the complaint contain[ed] multiple allegations that Meta's 'transmission of information through the Pixel is instantaneous'"); *see also Hazel v. Prudential Fin., Inc.*, 2023 WL 3933073, at *3 (N.D. Cal. June 9, 2023) ("in transit" requirement met where "Plaintiffs allege[d] that [defendant's] software 'records consumer interactions with a website in real time'" and that "[b]y embedding [defendant's] TrustedForm software . . . websites can 'surreptitiously observe and record visitors' keystrokes, mouse clicks, and other electronic communications,' beginning from the moment a user accesses the webpage" (record citations omitted)); *Ahringer*, 2024 WL 1135683, at *3 (allegation third party "observed [plaintiffs'] keystrokes, mouse clicks, and other electronic communications 'begin[ning] the moment [they] access[ed] or interact[ed]' with" website was "sufficient to meet the 'in transit' requirement" (citations and record quotations omitted)).

**B. Plaintiff Plausibly Alleges Violations of the Federal Wiretap Act by Microsoft**

Microsoft argues Plaintiff's Federal Wiretap Act Claim fails because "Plaintiff concedes that

Barnaby—a party to the alleged communication—'consented to Microsoft's' involvement by adding its code into its Websites." Microsoft Mot. at 12 (quoting FAC ¶ 69). As Microsoft acknowledges in a footnote, however, there is an "exception to the one-party consent rule," *id.* at 12 n.6 (citing 18 U.S.C. § 2511(2)(d)), which does not bar a claim where "the interception is 'for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State.'" FAC ¶ 68 (quoting 18 U.S.C. § 2511(2)(d)). But "Microsoft cannot rely on the one party consent rule . . . because, although Barnaby consented to Microsoft's interception, Microsoft's interception was for the purpose of violating Website *users'* right to privacy, and they did not consent." *Id.* ¶ 69. Its characterization of its purpose as "mak[ing] money," which it argues "is not a tortious purpose," thus misses the mark. *See* Mot. at 12 n.6. Microsoft's wanted users' private information, which it knew users had not consented to. *See* FAC ¶ 26 ("Clarity can be instructed not to place a cookie until consent is obtained from a website user. Clarity's cookies inform Microsoft whether Clarity has been so instructed on a given website." (footnote citation omitted)); *id.* ¶ 39 ("Microsoft's eavesdropping is unknown to and without the consent of the Websites' users.").

That Microsoft then used that private information for financial gain does not remove the initial tortious purpose. The Court should thus find Plaintiff states a Federal Wiretap Act claim based on Microsoft's spying on her to collect her personally identifying information and PPSI without her consent. *See In re Toys R Us, Inc., Priv. Litig.*, 2001 WL 34517252, at *8 (N.D. Cal. Oct. 9, 2001) (tortious purpose exception applied where defendant "intercepted plaintiffs' communications . . . 'to spy' on plaintiffs and collect their personal information without consent or compensation, and to misappropriate plaintiffs' 'personalty [sic], thereby obtaining detailed, free market research and consumer analysis'" (record citation omitted)); *Brown v. Google LLC*, 525 F. Supp. 3d 1049, 1068 (N.D. Cal. 2021) ["*Brown I*"] ("consent is not a defense to Plaintiffs' Wiretap Act claim because their communications were allegedly intercepted for the purpose of associating their data with user profiles, which is a criminal or tortious act in violation of the Constitution"); *Planned Parenthood Fed'n of Am., Inc., v. Ctr. for Med. Progress*, 214 F. Supp. 3d 808, 828 (N.D. Cal. 2016) ("defendants' subsequent disclosure of the contents of the intercepted conversations for the alleged purpose of *further* invading the privacy of plaintiffs' staff satisfies" the exception); *Sussman v. Am. Broad. Cos., Inc.*, 186 F.3d 1200, 1202 (9th Cir. 1999) (recording "pillow talk" "could be for both a legitimate purpose (news

gathering) and also an unlawful or tortious purpose (airing private intimate conduct)" but "[t]he existence of the lawful purpose would not sanitize a tape that was also made for an illegitimate purpose").

**C. Plaintiff Plausibly Alleges an Invasion of Her Privacy by Microsoft**

Due to the similarity in elements between common law intrusion upon seclusion and California constitutional invasion of privacy claims, "courts consider the claims together and ask whether: (1) there exists a reasonable expectation of privacy, and (2) the intrusion was highly offensive." *In re Facebook*, 956 F.3d at 601 (citing *Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 287 (2009)). "Whether the Plaintiff has an objectively reasonable expectation is generally a question of fact." *Mirkarimi v. Nev. Prop. 1 LLC*, 2013 WL 3761530, at *3 (S.D. Cal. July 15, 2013) (alteration and quotation omitted). "Whether an alleged intrusion is highly offensive to a reasonable person . . . . 'requires a holistic consideration of factors such as the likelihood of serious harm to the victim, the degree and setting of the intrusion, the intruder's motives and objectives, and whether countervailing interests or social norms render the intrusion inoffensive.'" *Cousin II*, 702 F. Supp. 3d at 973-74 (quoting *In re Facebook*, 956 F.3d at 606). This fact-intensive inquiry is generally "not capable of resolution . . . at the motion to dismiss stage." *Id.* at 973; *see also Shapiro v. AT&T Mobility, LLC*, 2020 WL 11763591, at *2 (C.D. Cal. Dec. 23, 2020) ("determining whether an intrusion is 'highly offensive' requires a fact-intensive inquiry . . . which 'cannot be conducted at the motion to dismiss stage.'" (quoting *In re Google Assistant Privacy Litig.*, 457 F. Supp. 3d 797, 830 (N.D. Cal. 2020))).

Plaintiff alleges that "[w]hen consumers communicate their PPSI to Barnaby, they reasonably believe Barnaby maintains the confidentiality of that information. . . . due to both the extremely sensitive and private nature of the information involved, and affirmative representations by Barnaby." FAC ¶ 15. "On the Websites' 'Help' pages, under 'Privacy and Security,' Barnaby states '[w]e are committed to protecting your privacy. We NEVER share our customers' personal information with anyone.'" *Id.* ¶ 16. "In its Privacy Policies, Barnaby represents it 'undertake[s] substantial efforts to protect the confidentiality of the identity, preferences, and other information it has collected about individual [users] and . . . will not knowingly allow access to this information to anyone outside [Barnaby].'" *Id.* ¶ 18; *see also id.* ¶¶ 19-21. Barnaby also promises "[a]ll of [its] packages are shipped discreetly . . . in plain packaging" to further protect its consumers' privacy. *See* https://www.goodvibes.com/help#shipping. Plaintiff and other website users' "reasonable expectation of privacy in their PPSI" is "reinforced by [these] representations," FAC. ¶ 114.

These allegations are sufficient to allege a reasonable expectation of privacy in using Barnaby's websites. *See Brown I*, 525 F. Supp. 3d at 1055, 1076-79 (plaintiffs "alleged that they have a reasonable expectation of privacy in their data" where Google collected data regarding "users' Internet activity, while in 'private browsing mode,'" that "may reveal[] a user's dating history, [and] a user's sexual interests and/or orientation," among other things, and "Google made representations that could suggest to a reasonable user that the data would not be shared with Google while the user was in private browsing mode" (record quotation and citation omitted)); *In re Facebook*, 956 F.3d at 604 n.7 ("individuals have a reasonable expectation of privacy in collections of information that reveal 'familiar, political, professional, religious, and sexual associations'" and "maintain the expectation that entities will not be able to collect such broad swaths of personal information absent consent" (quotation and citations omitted)); *Videckis v. Pepperdine Univ.*, 100 F. Supp. 3d 927, 934 (C.D. Cal. 2015) ("Plaintiffs had a reasonable expectation of privacy as to their sexual orientation and their intimate activities."); *In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d 262, 269, 294 (3d Cir. 2016) ["*Nickelodeon*"] (where Viacom's website stated, "HEY GROWN-UPS: We don't collect ANY personal information about your kids. Which means we couldn't share it even if we wanted to!," but plaintiffs alleged Viacom nevertheless "used cookies to track children's web browsing and video-watching habits on Viacom's websites," a "reasonable factfinder could conclude that Viacom's promise . . . created an expectation of privacy with respect to browsing activity").[6]

Plaintiff has also alleged that "Microsoft's intrusions by viewing and utilizing for economic gain Class Members' PPSI are highly offensive to a reasonable person" as "evidenced by, *inter alia*, Barnaby taking efforts to assure Website users their PPSI will not be shared," and "is also self-evident from the highly personal and protected nature of the information being taken and utilized without consent, including users'

[6] Because *Brown*, *In re Facebook*, and *Nickelodeon* all occurred in the context of the internet, they also demonstrate Microsoft is wrong that "the nature of the internet generally precludes a reasonable expectation of privacy," Microsoft Mot. at 13. Further, although Microsoft argues "[t]here is no expectation of privacy in public commercial spaces," *id.*, this ignores that consumers may choose to visit Barnaby's websites precisely because they are opting for a private experience that cannot be observed by others, as Barnaby promises. Defendants' tracking is also much more invasive than simply observing what could be seen in a brick-and-mortar store, *see id.*, including, for example, reading of "articles on various sex-related topics such as masturbation, level of sexual experience, 'tips & tricks,' expert advice, and sexual health," FAC ¶ 14. Observation is also by Microsoft, an *undisclosed* third party, and happens continuously from the moment a user engages with Barnaby's websites, rather than by happenstance, as is the case in brick-and-mortar stores.

sexual orientation." FAC ¶ 116. As this Court has recognized, "[t]he presence of an affirmative misrepresentation [about the privacy of the information collected] has been found significant by other courts," and acts as a "'plus' factor [that is] significant in establishing an expectation of privacy or making a privacy intrusion especially offensive," *McDonald v. Kiloo ApS*, 385 F. Supp. 3d 1022, 1036 (N.D. Cal. 2019) (citing *Nickelodeon*, 827 F.3d at 295, 269). In light of representations on the Websites that Barnaby "undertake[s] substantial efforts to protect the confidentiality of the identity, preferences, and other information it has collected about individual [users] and . . . will not knowingly allow access to this information to anyone outside [Barnaby],'" FAC ¶ 18, and the vast and highly sensitive nature of the information collected, the Court should find Plaintiff plausibly alleges Microsoft's intrusion is highly offensive to a reasonable person. *See McDonald*, 385 F. Supp. 3d at 1034-35 (plaintiffs "adequately alleged . . . the offensiveness element" where they alleged defendants "surreptitiously gathered user-specific information . . . continue[d] to gather information and track individual users in real time," and "share[d] . . . this information with other third-party companies . . . result[ing] in the minor users being shown targeted advertisements and in the users continuing to be tracked after being shown the advertisements to see if they take actions in response to the ads"); *Nickelodeon*, 827 F.3d at 295.

Moreover, Microsoft acknowledges that "website publisher[s] . . . might be subject to a law that requires [them] to obtain consent before setting cookies on a user's browser or collecting users' personal information," FAC ¶ 26. Microsoft's "recogni[tion]" that Barnaby's data collection is potentially "problematic" further supports Plaintiff's allegation that Microsoft's conduct is highly offensive. *See Brown I*, 525 F. Supp. 3d at 1079 (allegation that "Google's employees made numerous admissions . . . recognizing that Google's privacy disclosures are a 'mess' with regards to obtaining 'consent' for its data collection practices" supported the plausibility of Google's intrusion being highly offensive (record quotation omitted)).

Because the cases Plaintiff cites involve online data collection, they also demonstrate Microsoft is wrong that online "'data collection and disclosure to third parties . . . is routine commercial behavior'" and thus "not highly offensive *as a matter of law*." Mot. at 13 (alteration omitted and emphasis added) (quoting *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1090 (N.D. Cal. 2022)). Although the "intrusion's commercial purpose" is one of "a multitude of factors" determining whether an intrusion is highly offensive, *Brown I*, 525 F. Supp. 3d at 1079-80, it does not, as Microsoft implies, foreclose a finding of offensiveness

as a matter of law, *see* Microsoft Mot. at 13; *see also Brown I*, 525 F. Supp. 3d at 1079-80 (plaintiffs sufficiently alleged data collection was highly offensive notwithstanding the defendant's argument that "its interceptions 'served a legitimate commercial purpose'" (record quotation omitted)); *In re Google Inc. Cookie Placement Consumer Priv. Litig.*, 806 F.3d 125, 150-51 (3d Cir. 2015) ("a reasonable factfinder could indeed deem Google's conduct 'highly offensive,'" even though "tracking cookies are routine"). Contrary to Microsoft's claim, this *is* true in cases involving "sensitive information such as [about] 'a user's . . . menstrual cycle,' . . . or 'patients' information,'" *see* Mot. at 13-14 (quoting *Hammerling*, 615 F. Supp. 3d at 1090; *Cousin v. Sharp Healthcare*, 681 F. Supp. 3d 1117, 1126-27 (S.D. Cal. 2023)). *See Frasco v. Flo Health, Inc.*, 2022 WL 21794391, at *1 (N.D. Cal. June 6, 2022) (Donato, J.) (finding plaintiffs "plausibly alleged the disclosure of private information and intrusion upon seclusion" where female health app, Flo Health, "disclosed sensitive health information to the non-Flo defendants"); *Cousin II*, 702 F. Supp. 3d at 974 (plaintiffs plausibly alleged intrusion upon seclusion where "their medical conditions and statuses as patients with certain doctors were tracked on Defendant's website and transmitted to Meta").

### D. Plaintiff Plausibly Alleges Violations of the UCL by Microsoft

To establish standing under the UCL, a plaintiff must allege she "has suffered injury in fact and has lost money or property as a result of the unfair competition." Cal. Bus. & Prof. Code § 17204. "There are innumerable ways in which economic injury from unfair competition may be shown." *Kwikset Corp. v. Super. Ct.*, 51 Cal. 4th 310, 323 (2011). As discussed above, *supra* Part I.B., "Plaintiff[] ha[s] shown that there is a market for [her] browsing data and [Microsoft's] alleged surreptitious collection of the data inhibited plaintiff['s] ability to participate in that market." *Brown v. Google LLC*, 685 F. Supp. 3d 909, 942 (N.D. Cal. 2023). This is "sufficient" to allege "plaintiff[] ha[s] suffered an injury in fact." *Id.*; *see also Calhoun v. Google LLC*, 526 F. Supp. 3d 605, 636 (N.D. Cal. 2021) ("the Ninth Circuit and a number of district courts . . . have concluded that plaintiffs who suffered a loss of their personal information suffered economic injury and had standing" (collecting cases)); *Doe v. Microsoft Corp.*, 2023 WL 8780879, at *13 (W.D. Wash. Dec. 19, 2023) (finding UCL standing where "[p]laintiff assert[ed] she has 'suffered an injury in fact, including lost consideration for provision of access to [her private data] and diminished value of that data,'" and noting that "'the growing trend across courts . . . is to recognize the lost property value of this information'" (record quotation and citations omitted) (quoting *In re Marriott Int'l, Inc., Cust. Data Sec.*

*Breach Litig.*, 440 F. Supp. 3d 447, 461 (D. Md. 2020))). Microsoft's remaining UCL arguments, *see* Microsoft Mot. at 14, merely repeat its erroneous arguments raised elsewhere.

### E. Plaintiff Plausibly Alleges a Claim for Unjust Enrichment Against Microsoft

Microsoft argues there is no unjust enrichment claim in California. *See* Microsoft Mot. at 15. While there was previously "some uncertainty among California courts as to whether unjust enrichment is recognized under California law," the Ninth Circuit has "clarified that 'this Circuit has construed the common law to allow an unjust enrichment cause of action through quasi-contract.'" *Krystofiak v. BellRing Brands, Inc.*, 2024 WL 3012801, at *12 (N.D. Cal. June 14, 2024) (quoting *ESG Capital Partners, LP v. Stratos*, 828 F.3d 1023, 1038 (9th Cir. 2016)). This Court thus recently "decline[d] to dismiss [an unjust enrichment] claim at this stage of the case." *See Sinatro v. Welch Foods Inc.*, 2023 WL 3590681, at *2 (N.D. Cal. May 22, 2023) (Donato, J.). Microsoft's remaining arguments have already been addressed.

## III. PLAINTIFF HAS STANDING TO SEEK INJUNCTIVE RELIEF

Citing *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020), Microsoft argues Plaintiff cannot pursue equitable relief because she "only offers conclusory allegations that 'legal remedies are inadequate,'" Microsoft Mot. at 15 (quoting FAC ¶ 139). But "[u]nder *Sonner*, a plaintiff 'need not explain in great detail why her legal remedies are insufficient; an allegation to that effect is generally enough.'" *In re Meta Pixel Tax Filing Cases*, 2024 WL 1251350, at *23 (N.D. Cal. Mar. 25, 2024) (quoting *Weizman v. Talkspace, Inc.*, 705 F. Supp. 3d 984, 990 n.3 (N.D. Cal. 2023)). "*Sonner* will rarely (if ever) require more this early in the case," *Johnson v. Trumpet Behav. Health, LLC*, 2022 WL 74163, at *3 (N.D. Cal. Jan. 7, 2022)). Plaintiff's FAC nevertheless *does* explain why legal remedies are inadequate. She alleges "Microsoft's financial benefits resulting from its unlawful and inequitable conduct are economically traceable to Plaintiff's and Class Members' PPSI being obtained without their consent," for which they "have not been compensated," and their "legal remedies are inadequate to address this injury." FAC ¶ 139. This includes Microsoft's "use[ ] [of] the data it obtains . . . to 'gain insights' that allow it to . . . 'improve machine learning models'—*i.e.*, artificial intelligence—'that power many of [its] products and services,'" *id.* ¶ 25, and "to improve its advertising targeting services," through which "Microsoft directly profits in the form of increased payments from advertisers," *id.* ¶ 30; *see also id.* ¶¶ 136, 141. Plaintiff's legal remedies, by contrast, include statutory damages, which compensate Plaintiff a fixed sum for the wiretapping itself,

*see id.* ¶¶ 106, 112, or actual damages, which compensate her for the intrusion upon her seclusion and invasion of her privacy, *id.* ¶¶ 118, 124, rather than the economic benefit Microsoft obtained from its non-consenting use of her data. Accordingly, Plaintiff does not seek "the same amount of money for the exact same harm," *Sonner*, 971 F.3d at 844, "establish[ing] that this Court has equitable jurisdiction to consider plaintiffs'" equitable claims, *see In re Meta Pixel Tax Filing Cases*, 2024 WL 1251350, at *23; *see also Rabin v. Google LLC*, 2024 WL 1269313, at *3 (N.D. Cal. Mar. 26, 2024).

Microsoft also argues "Plaintiff also lacks standing to seek prospective injunctive relief" because she "does not plead that she intends to use Barnaby's Websites again," Microsoft Mot. at 15. But Plaintiff alleges ongoing harm regardless because Microsoft "use[s her information] for financial gain through better targeting of advertisements" and "improvements to the machine learning models (AI) that power many of its products and services," FAC ¶ 49; *see also id.* ¶¶ 25, 30. She specifically seeks "[a]n Order compelling Microsoft's destruction of all data obtained from communications between Barnaby and the Class without Class Members' consent," *id.* ¶ 145(h). That is sufficient for standing to seek prospective relief. *cf. Galaria v. Nationwide Mut. Ins. Co.*, 663 F. App'x 384, 388 (6th Cir. 2016) (following data breach, "a reasonable inference can be drawn that the hackers will use the victims' data for . . . fraudulent purposes"). To the extent Plaintiff needs to plead additional ongoing harm from future visits to the Barnaby Websites, she alleges she has an ongoing "reasonable expectation that [her] PPSI will not be captured by Microsoft without [her] consent and subsequently used for Microsoft's economic gain," FAC ¶ 115; *see also id.* ¶118 (seeking "injunctive relief prohibiting any further intrusions into their privacy by Microsoft" when she again visits the websites), giving rise to an inference she will visit a Website again, putting her at risk of future injury.[7] *See Toy v. Life Line Screening of Am. Ltd.*, 2024 WL 1701263, at *1 (N.D. Cal. Mar. 19, 2024) (allegation that plaintiff "'has a continuing interest in ensuring that future communications with [Life Line] are protected and safeguarded from future unauthorized disclosure,'" when "taking all inferences in her favor, is sufficient to allege a threat of future harm" (record quotation omitted)).

**<u>CONCLUSION</u>**

The Court should deny Microsoft's motion, or grant leave to amend if necessary.

[7] If necessary, Plaintiff respectfully requests leave to allege she wishes to visit the Websites in the future.

Dated: September 27, 2024

Respectfully Submitted,

/s/ Melanie R. Monroe

**FITZGERALD MONROE FLYNN PC**
JACK FITZGERALD
*jfitzgerald@fmfpc.com*
MELANIE R. MONROE
*mmonroe@fmfpc.com*
TREVOR FLYNN
*tflynn@fmfpc.com*
PETER GRAZUL
*pgrazul@fmfpc.com*
2341 Jefferson Street, Suite 200
San Diego, California 92110
Phone: (619) 215-1471

***Counsel for Plaintiff***