**FITZGERALD MONROE FLYNN PC**
JACK FITZGERALD (SBN 257370)
*jfitzgerald@fmfpc.com*
MELANIE R. MONROE (SBN 275423)
*mmonroe@fmfpc.com*
TREVOR FLYNN (SBN 253362)
*tflynn@fmfpc.com*
PETER GRAZUL (SBN 342735)
*pgrazul@fmfpc.com*
2341 Jefferson Street, Suite 200
San Diego, California 92110
Phone: (619) 215-1471
Fax: (619) 331-2943

***Counsel for Plaintiff***

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

STELLA TATOLA, on behalf of herself, those similarly situated, and the general public,

Plaintiff,

v.

BARNABY LTD., LLC, and MICROSOFT CORPORATION,

Defendants.

Case No. 3:24-cv-03789-JD

**PLAINTIFF'S OPPOSITION TO BARNABY'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT [DKT. NO. 32]**

Judge: Hon. James Donato
Date: October 24, 2024
Time: 10:00 a.m.
Courtroom: 11

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ....... ii

INTRODUCTION ....... 1

ARGUMENT ....... 1

I. PLAINTIFF HAS ARTICLE III STANDING ....... 1

A. Plaintiff Alleges Injury to Traditional Privacy Interests ....... 1

B. Plaintiff Has Standing to Represent Class Members with Substantially Similar Claims ....... 5

II. PLAINTIFF'S FAC PLAUSIBLY STATES CLAIMS ....... 5

A. Plaintiff Plausibly Alleges Violations of the UCL by Barnaby ....... 5

B. Plaintiff Plausibly Alleges Negligence by Barnaby ....... 7

C. Plaintiff Plausibly Alleges Violations of CIPA by Barnaby ....... 8

CONCLUSION ....... 15

## TABLE OF AUTHORITIES

**Cases**

*A.S. v. SelectQuote Ins. Servs.*,
2024 WL 3881850 (S.D. Cal. Aug. 19, 2024) .......... 14

*Adler v. Altsleep, LLC*,
2023 WL 3080757 (C.D. Cal. Feb. 7, 2023) .......... 5

*Ahringer v. LoanDepot, Inc.*,
2024 WL 1135683 (C.D. Cal. Feb. 6, 2024) .......... 8, 12

*Aid for Women v. Foulston*,
441 F.3d 1101 (10th Cir. 2006) .......... 2

*Bass v. Facebook, Inc.*,
394 F. Supp. 3d 1024 (N.D. Cal. 2019) .......... 8

*Bloch v. Ribar*,
156 F.3d 673 (6th Cir. 1998) .......... 2

*Brown v. Hain Celestial Group, Inc.*,
913 F. Supp. 2d 881 (N.D. Cal. 2012) .......... 5

*Byars v. Goodyear Tire & Rubber Co.*,
654 F. Supp. 3d 1020 (C.D. Cal. 2023) .......... 11

*Cousin v. Sharp Healthcare*,
702 F. Supp. 3d 967 (S.D. Cal. 2023) .......... 10

*Dent v. Nat'l Football League*,
902 F.3d 1109 (9th Cir. 2018) .......... 7

*Doe v. Cnty. of Santa Clara*,
2024 WL 3346257 (N.D. Cal. July 8, 2024) .......... 13

*Doe v. Eating Recovery Ctr. LLC*,
2024 WL 2852210 (N.D. Cal. June 4, 2024) .......... 12

*Doe v. FullStory, Inc.*,
712 F. Supp. 3d 1244 (N.D. Cal. 2024) .......... 14

*Doe v. Kaiser Found. Health Plan, Inc.*,
2024 WL 1589982 (N.D. Cal. Apr. 11, 2024) .......... 8

*Doe v. Meta Platforms, Inc.*,
690 F. Supp. 3d 1064 (N.D. Cal. 2023) .......... 14

*Esparza v. Kohl's, Inc.*,
2024 WL 1152732 (S.D. Cal. Mar. 18, 2024) ....................9

*Frasco v. Flo Health, Inc.*,
2024 WL 4280933 (N.D. Cal. Sept. 23, 2024) ....................15

*Friedman v. MedJet Assistance, LLC*,
2010 WL 11463109 (C.D. Cal. May 13, 2010) ....................10

*Gibson v. Planned Parenthood Fed'n of Am., Inc.*,
2024 WL 4251892 (N.D. Cal. July 2, 2024)....................11

*Griswold v. Conn.*,
381 U.S. 479 (1965)....................1

*Gutierrez v. Converse Inc.*,
2023 WL 8939221 (C.D. Cal. Oct. 27, 2023)....................12

*Hazel v. Prudential Fin., Inc.*,
2023 WL 3933073 (N.D. Cal. June 9, 2023) ....................12

*In re Capacitors Antitrust Litig.*,
154 F. Supp. 3d 918 (N.D. Cal. 2015) ....................6

*In re Facebook, Inc., Consumer Privacy User Profile Litig.*,
402 F. Supp. 3d 767 (N.D. Cal. 2019) ....................8, 15

*In re Google Inc.*,
2013 WL 5423918 (N.D. Cal. Sept. 26, 2013) ....................14

*In re Google Location Hist. Litig.*,
428 F. Supp. 3d 185 (N.D. Cal. 2019) ....................13

*In re Meta Pixel Healthcare Litig.*,
647 F. Supp. 3d 778 (N.D. Cal. 2022) ....................13

*In re Meta Pixel Tax Filing Cases*,
--- F. Supp. 3d ----, 2024 WL 1251350 (N.D. Cal. Mar. 25, 2024)....................3

*In re San Francisco 49ers Data Breach Litig.*,
2024 WL 3849336 (N.D. Cal. Aug. 15, 2024) ....................7

*In re Solara Med. Supplies, LLC Customer Data Sec. Breach Litig.*,
613 F. Supp. 3d 1284 (S.D. Cal. May 2020) ....................6

*In re Vizio, Inc., Consumer Priv. Litig.*,
238 F. Supp. 3d 1204 (C.D. Cal. 2017) ....................6, 7

*In re Zynga Privacy Litig.*,
750 F.3d 1098 (9th Cir. 2014) .......... 9

*J'Aire Corp. v. Gregory*,
24 Cal.3d 799 (1979) .......... 7

*James v. Walt Disney Co.*,
701 F. Supp. 3d 942 (N.D. Cal. 2023) .......... 11

*John B. v. Super. Ct.*,
38 Cal. 4th 1177 (2006) .......... 1

*Kauffman v. Papa John's Int'l, Inc.*,
2024 WL 171363 (S.D. Cal. Jan. 12, 2024) .......... 13

*Kearns v. Ford Motor Co.*,
567 F.3d 1120 (9th Cir. 2009) .......... 7

*Khasin v. Hershey Co.*,
2012 WL 5471153 (N.D. Cal. Nov. 9, 2012) .......... 3

*Kwikset Corp. v. Super. Ct.*,
51 Cal. 4th 310 (2011) .......... 5

*Matera v. Google Inc.*,
2016 WL 5339806 (N.D. Cal. Sept. 23, 2016) .......... 14

*McClung v. AddShopper, Inc.*,
2024 WL 189006 (N.D. Cal. Jan. 17, 2024) .......... 6

*McCoy v. Alphabet, Inc.*,
2021 WL 405816 (N.D. Cal. Feb. 2, 2021) .......... 14

*McDonald v. Kiloo ApS*,
385 F. Supp. 3d 1022 (N.D. Cal. 2019) .......... 3, 15

*Melendres v. Arpaio*,
784 F.3d 1254 (9th Cir. 2015) .......... 5

*Nguon v. Wolf*,
517 F. Supp. 2d 1177 (C.D. Cal. 2007) .......... 2

*Opperman v. Path, Inc.*,
205 F. Supp. 3d 1064 (N.D. Cal. 2016) .......... 13

*Poulopoulos v. OpticsPlanet, Inc.*,
2024 WL 3822774 (C.D. Cal. Aug. 8, 2024) .......... 5

*Price v. Carnival Corp.*,
2024 WL 221437 (S.D. Cal. Jan. 19, 2024) .......... 9, 10

*Roman Catholic Bishop of San Diego v. Super. Ct.*,
42 Cal. App. 4th 1556 (1996) .......... 1

*Saleh v. Nike, Inc.*,
562 F. Supp. 3d 503 (C.D. Cal. 2021) .......... 9, 10

*Silver v. Stripe Inc.*,
2021 WL3191752 (N.D. Cal. July 28, 2021) .......... 15

*Tanner v. Acushnet Co.*,
2023 WL 8152104 (C.D. Cal. Nov. 20, 2023) .......... 10

*Thorne v. City of El Segundo*,
726 F.2d 459 (9th Cir. 1983) .......... 2

*Yockey v. Salesforce, Inc.*,
688 F. Supp. 3d 962 (N.D. Cal. 2023) .......... 13

*Yoon v. Lululemon USA, Inc.*,
549 F. Supp. 3d 1073 (C.D. Cal. 2021) .......... 11

**Statutes**

18 U.S.C. § 2510(8) .......... 9

Cal. Bus. & Prof. Code § 17204 .......... 5

Cal. Penal Code § 631(a) .......... 8

**Other Authorities**

Cal. Const., art. I, § 1 .......... 1

**Rules**

Fed. R. Civ. P. 15 .......... 6

## INTRODUCTION

Barnaby's Motion to Dismiss, Dkt. No. 32 ("Barnaby Mot.") provides no salient reason to dismiss Plaintiff's claims. Plaintiff has Article III standing because she alleges Defendants captured and invaded information revealing her sexual preferences, which is private and historically protected. Plaintiff states a UCL claim because she paid money for the products she purchased and would have paid less for or not purchased products from the Websites had she known about the collection and use of her protected information. Further, although Barnaby's negligence arguments analyze three paragraphs of the FAC in isolation, claiming they are conclusory, when the FAC is viewed in its entirety, Barnaby's argument fails. Lastly, Barnaby's CIPA arguments should be rejected because Plaintiff's interactions with the Website revealed her private sexual information, constituting "communications," and she expressly alleges Microsoft intercepted and read those communications while in transit. Additionally, because Plaintiff never affirmatively agreed to Barnaby's Privacy Policy, which further promises to never share users' personal information with anyone, Barnaby cannot show Plaintiff consented to the collection and use of her information. Accordingly, the Court should deny Barnaby's motion.

## ARGUMENT

### I. PLAINTIFF HAS ARTICLE III STANDING

Plaintiff alleges Barnaby's wrongful behavior caused her both a concrete dignitary injury—the invasion of her privacy—and an economic injury in the form of overpayment for goods. Both give her standing to pursue her claims. Plaintiff, who alleges injury from visiting Barnaby's adult toy website, www.goodvibes.com, may also represent Class Members with substantially similar claims against Barnaby because they visited its other adult toy website engaged in the exact same misbehavior, www.babeland.com.

#### A. Plaintiff Alleges Injury to Traditional Privacy Interests

"Privacy is a fundamental liberty implicitly guaranteed by the federal Constitution and is explicitly guaranteed under the California Constitution as an inalienable right." *Roman Catholic Bishop of San Diego v. Super. Ct.*, 42 Cal. App. 4th 1556, 1567 (1996) (internal citation omitted) (citing *Griswold v. Conn.*, 381 U.S. 479, 484-86 (1965); Cal. Const., art. I, § 1). "The right encompasses privacy in one's sexual matters . . . ." *Id.* (citation omitted); *see also John B. v. Super. Ct.*, 38 Cal. 4th 1177, 1198 (2006) ("the right to privacy" under "the California Constitution . . . . extends to sexual relations" (citation omitted)); *Nguon v. Wolf*, 517

F. Supp. 2d 1177, 1196 (C.D. Cal. 2007) (recognizing "a legally protected privacy interest under the California Constitution in information about [one's] sexual orientation" (citation omitted)); *Thorne v. City of El Segundo*, 726 F.2d 459, 468 (9th Cir. 1983) ("The interests [the plaintiff] raises in the privacy of her sexual activities are within the zone protected by the constitution."); *cf. Aid for Women v. Foulston*, 441 F.3d 1101, 1110 (10th Cir. 2006) (where there was a "risk that Plaintiffs will be prosecuted . . . should they fail to report . . . sexual activity, they have sufficiently alleged a concrete injury-in-fact"). This is because decisions and activities related to human sexuality are among the most private aspects of a person's life. *See Bloch v. Ribar*, 156 F.3d 673, 685 (6th Cir. 1998) (

> Our sexuality and choices about sex . . . are interests of an intimate nature which define significant portions of our personhood. Publicly revealing information regarding these interests exposes an aspect of our lives that we regard as highly personal and private. Indeed, for many of these reasons, a number of our sister circuits have concluded that information regarding private sexual matters warrants constitutional protection against public dissemination. (collecting cases)).

Here, Plaintiff alleges that "since Barnaby installed [Microsoft's] trackers," she has "periodically . . . visited, browsed, *and purchased adult products* from one of Barnaby's Websites[.]" Dkt. No. 16, First Am. Compl. ("FAC") ¶ 74 (emphasis added). "When consumers browse the Websites to shop for and purchase adult products, sex toys, lingerie, and other similar items . . . they communicate private and extremely personal information to Barnaby," including "sexual preferences, sexual orientation, sexual practices, and adult product preferences (collectively 'Private and Protected Sexual Information' or 'PPSI')." *Id.* ¶ 12; *see also id.* ¶¶ 13-14 (alleging how merely browsing the Websites can reveal sensitive sexual information).[1] Thus, when "visit[ing], brows[ing], and purchas[ing] adult products from" Barnaby, Plaintiff "communicated her PPSI to Barnaby." *Id.* ¶ 74. "Each time Plaintiff used the Website, Barnaby allowed Microsoft to intercept, learn the contents of, and utilize for commercial gain [her] messages, reports and/or communications." *Id.* ¶ 78. "Plaintiff did not know that her PPSI . . . would be shared, used, sold, or otherwise disclosed to Microsoft," *id.* ¶ 81, did not consent to it, *id.* ¶ 82, and "reasonably believed" her "PPSI . . . w[as] private," *id.* ¶ 83.

[1] For this reason, unlike pet supply and video game stores, adult stores and purchases *are* traditionally private: brick-and-mortar adult stores have no windows, or obscure them; and adult magazines, videos, and other adult products are sent through the mail in unmarked packages.

"[A] Machine Unique Identifier ('MUID') is a unique identifier generated by Microsoft and assigned to a specific user to track the user's activity across the internet, and Microsoft . . . employs the use of MUID cookies to '[i]dentif[y] unique web browsers visiting Microsoft sites.'" *Id.* ¶ 24 (quotation omitted). A "MUID is unique to each user and can be used to identify individuals." *Id.* ¶ 29. Microsoft's "MUID is persistent throughout both [Barnaby] Websites." *Id.* The "consistent transmission of each user's communications associated with a unique MUID, enables Microsoft to identify the person who has communicated with Barnaby through the Websites and thus to connect a Website user's PPSI to their identity." *Id.* ¶ 46. For example, when Plaintiff "purchased adult products from one of Barnaby's Websites," *id.* ¶ 74, she necessarily had to (and did) "keystroke" her name, home address, email address, telephone number, and credit card information.[2] Once she did that, her personally identifying information was forever linked with her MUID, and thus her browsing behavior. *See id.* ¶ 46.

Barnaby cannot genuinely dispute Plaintiff has a reasonable expectation of privacy in matters relating

[2] Although not alleged expressly, this is a reasonable inference from the allegation that Plaintiff "purchased adult products from one of Barnaby's Websites," FAC ¶ 74, because that is a prerequisite for doing so. Barnaby nevertheless complains Plaintiff "has not identified any products that she viewed, searched for, or purchased in support of her PPSI theory," Barnaby Mot. at 6; *see also id.* at 8 (asserting Plaintiff "offers no details as to any specific information she may have provided"). If necessary, Plaintiff could amend to add allegations of this personally identifying information she provided to Defendants when she "purchased adult products" from Barnaby. She could also allege the specific (multiple) products she purchased, and dates of purchase, but that would require her to disclose PPSI that the federal and California constitutions scrupulously protect. While she has put that information at issue, so that it is discoverable in this litigation (though likely subject to a protective order that has not yet been entered) she should not be required to plead it, as the specific adult products she purchased are not relevant to the issues presently before the Court. *See In re Meta Pixel Tax Filing Cases*, --- F. Supp. 3d ----, 2024 WL 1251350, at *6 (N.D. Cal. Mar. 25, 2024) ("Plaintiffs do not need to plead the specific and presumably highl[y] sensitive contents of the communications they say were intercepted in order to plausibly allege that interception occurred."). Given the nature of the websites, any product purchased would reveal, at minimum, her "sexual preferences . . . [and] practices, and adult product preferences," FAC ¶ 12. Further, while Barnaby complains Plaintiff "does not specify when she purportedly visited . . . www.goodvibes.com," Barnaby Mot. at 8, it admits Plaintiff alleges she "visited, browsed, and purchased adults products . . . over the past few years" *id.* (quoting FAC ¶ 74), and Barnaby omits that this allegation includes the phrase "including since Barnaby installed the Clarity and Bing trackers," FAC ¶ 74. This is sufficient to allege the "when" of her harm. *See, e.g.*, *Khasin v. Hershey Co.*, 2012 WL 5471153, at *8 (N.D. Cal. Nov. 9, 2012) ("the 'when' is since 2008 and throughout the Class Period"); *McDonald v. Kiloo ApS*, 385 F. Supp. 3d 1022, 1036 (N.D. Cal. 2019) (Donato, J.) (where "Defendants s[ought] to downplay plaintiffs' complaints as alleging only the 'collection of anonymous digital user data' and as lacking non-conclusory allegations," finding "[w]hen read in a common-sense way, as Rule 8 requires, plaintiffs' allegations are considerably more user-specific than defendants suggest and more than adequately allege that the collected data was used to serve plaintiffs with targeted advertising while using the apps" (record quotation omitted)).

to her sexuality, so it contests her allegations that she communicated her PPSI at all, claiming the FAC fails to allege her information was "personally identifiable." Barnaby Mot. at 5 (asserting "Plaintiff has not alleged that she provided any specific information that was personally identifiable"). As explained above, that mischaracterizes the FAC. Moreover, contrary to Barnaby's suggestion, Plaintiff is not merely complaining that it let Microsoft intercept her "non-personal data (keystrokes, mouse clicks, and pages viewed) that courts have rejected as insufficient to show an Article III injury based on a supposed invasion of privacy." *See* Barnaby Mot. at 6 (citations omitted). Rather, she is complaining that, because Barnaby's Websites sell adult toys and pervasively involve information about human sexuality, by letting Microsoft intercept her browsing behavior, her "private and extremely personal" PPSI—which Barnaby promised to protect—was transmitted to Microsoft without her consent. *See* FAC ¶ 12, 16, 18. For example, even "[s]electing among [various product] categories reveals preferences and practices and has the capacity and tendency to reveal users' sexual orientation." *Id.* ¶ 13. "The Website's home pages also feature articles on various sex-related topics . . . all of which would, if a user browses that information, further reveal the PPSI of the user." *Id.* ¶ 14.

Barnaby contests this, arguing that "[v]iewing, searching for, or even purchasing adult toys and intimacy products does not inherently demonstrate an identifiable individual's own sexual preferences, orientation, practices, or even product preferences." Barnaby Mot. at 5. That is contrary to Plaintiff's allegations, FAC ¶¶ 12-14, and common sense, at most raising a question of fact inappropriate for resolution now.

Finally, Defendants each contest traceability by pointing the finger at the other as the real tortfeasor. *See* Dkt. No. 29, Microsoft's Mot. to Dismiss ("Microsoft Mot.") at 9 ("[E]ven if [Plaintiff] had" alleged "collection of any personally identifiable data by Microsoft . . . that injury would not be due to any action by Microsoft but instead due to the discretionary choices of the website operator."); Barnaby Mot. at 5 ("[W]hile Plaintiff attempts to allege that Microsoft intruded upon her privacy, she does not assert similar claims against Barnaby." (record citation omitted)). As alleged in the Complaint, however, it is the combination of improper behavior by both entities that has permitted the invasions of privacy Plaintiff alleges. Barnaby could not have transmitted Plaintiff's PPSI without Microsoft's tracking technology and willingness to receive it, and Microsoft could not have obtained Plaintiff's PPSI without Barnaby's willingness to give it up, in violation of its promises.

### B. Plaintiff Has Standing to Represent Class Members with Substantially Similar Claims

Plaintiff alleges Barnaby "[t]hrough at least two different websites . . . sells adult toys and products aimed at enhancing sexual wellbeing and pleasure," namely www.goodvibes.com and www.babeland.com. FAC ¶¶ 1, 11. For all material purposes of her claims, she alleges the websites are identical. *See, e.g.*, *id.* ¶¶ 12-21 & nn.1-4. Barnaby nevertheless argues Plaintiff "uncontestably lacks standing to sue over the alleged use of session replay technology on one of Barnaby's websites that Plaintiff does not allege she visited (*i.e.*, www.babeland.com)." Barnaby Mot. at 3. But it does not explain how, nor even assert that the claims of Barnaby customers who visited www.babeland.com are any different than Plaintiff's claims. *Cf. Brown v. Hain Celestial Group, Inc.*, 913 F. Supp. 2d 881, 890 (N.D. Cal. 2012) ("The majority of the courts that have carefully analyzed the question hold that a plaintiff may have standing to assert claims for unnamed class members based on products he or she did not purchase so long as the products and alleged misrepresentations are substantially similar." (citations omitted)). Even if Barnaby had asserted differences, "the Ninth Circuit has 'adopt[ed] the class certification approach' for handling arguments that there are material 'dissimilarities between the claims of named and unnamed plaintiffs.'" *Poulopoulos v. OpticsPlanet, Inc.*, 2024 WL 3822774, at *4 (C.D. Cal. Aug. 8, 2024) (quoting *Melendres v. Arpaio*, 784 F.3d 1254, 1261 (9th Cir. 2015)). "[T]he question whether [a plaintiff with Article III standing] may be allowed to present claims on behalf of others who have [allegedly] similar, but not identical, interests depends not on standing, but on an assessment of the typicality and adequacy of representation." *Melendres*, 784 F.3d at 1262 (quotation omitted). "Therefore, under Ninth Circuit precedent, [Barnaby's] argument is premature[.]" *See Poulopoulos*, 2024 WL 3822774, at *4 (citing *Adler v. Altsleep, LLC*, 2023 WL 3080757, at *8 (C.D. Cal. Feb. 7, 2023) (whether plaintiff's and putative class members' injuries are "substantially similar" "is better addressed at the class certification stage than on a motion to dismiss")).

## II. PLAINTIFF'S FAC PLAUSIBLY STATES CLAIMS

### A. Plaintiff Plausibly Alleges Violations of the UCL by Barnaby

To establish standing under the UCL, a plaintiff must allege she "has suffered injury in fact and has lost money or property as a result of the unfair competition." Cal. Bus. & Prof. Code § 17204. "There are innumerable ways in which economic injury from unfair competition may be shown." *Kwikset Corp. v. Super. Ct.*, 51 Cal. 4th 310, 323 (2011).

Plaintiff alleges she paid money to Barnaby in making her purchases. FAC ¶ 74. If necessary, Plaintiff could (and requests leave to) amend her complaint to allege, in line with the damages models enumerated in her initial disclosures, *see* Opp. to Microsoft Mot. to Dismiss FAC at 4 n.2 (theories (iii) and (vi)), that she would have paid less or not purchased from Barnaby had she known her PPSI would be disclosed to Microsoft. *See McClung v. AddShopper, Inc.*, 2024 WL 189006, at *2 (N.D. Cal. Jan. 17, 2024) (finding UCL standing where "complaint create[d] a reasonable inference that the plaintiffs purchased products from retailers in the network created by AddShoppers, and that they entered AddShoppers's network and received unwanted email communications as a result of those purchases" and alleged "plaintiffs would not have purchased products from these retailers had they known that it would subject them to the alleged scheme"). This would mean Plaintiff was "denied the benefit of [her] bargain" with Barnaby, which "is sufficient to confer statutory standing" under the UCL. *See id.* (citing *In re Solara Med. Supplies, LLC Customer Data Sec. Breach Litig.*, 613 F. Supp. 3d 1284, 1301 (S.D. Cal. May 2020) ("Courts in California have consistently held that benefit of the bargain damages represents economic injury for purposes of the UCL.")); *see also In re Vizio, Inc., Consumer Priv. Litig.*, 238 F. Supp. 3d 1204, 1220 (C.D. Cal. 2017) (finding UCL standing where plaintiff "plausibly allege[d] that, had he been informed about Vizio's data collection and disclosure practices, he would have paid less for the Smart TV or not purchased the product at all"); *cf. In re Capacitors Antitrust Litig.*, 154 F. Supp. 3d 918, 933 (N.D. Cal. 2015) (Donato, J.) ("leave to amend is to be granted liberally when justice requires" (citing Fed. R. Civ. P. 15)).

Barnaby's assertion that Plaintiff's "unlawful" prong claim fails, Barnaby Mot. at 10, depends on its mistaken assertion that Plaintiff fails to state CIPA and negligence claims.

Barnaby argues "the FAC does not satisfy the heightened pleading standard of Rule 9(b)," which it asserts applies because "the FAC clearly alleges that Barnaby engaged in a 'unified course of fraudulent conduct' that forms the basis of the UCL claim." *Id.* at 10 (citing FAC ¶¶ 15-21, 38-45, 47, 127).[3] While it is true Plaintiff alleges Barnaby made some affirmative misrepresentations and omissions that led her to believe her privacy was protected, that is not the basis of the injuries she alleges for the UCL causes of action she asserts which—as Barnaby notes—do not include a "fraudulent" prong claim. *See id.* Plaintiff's claim

[3] Contrary to Barnaby's citation, the quoted language does not appear in the FAC.

under the UCL's "unlawful" prong claim only depends upon showing Barnaby violated CIPA or some other law—not that it engaged in fraud. Likewise, Plaintiff's claim under the UCL's "unfair" prong only requires her to show that one of the applicable tests is satisfied—not that Barnaby engaged in fraud.

That being said, to the extent Plaintiff must amend to allege a benefit-of-the-bargain economic loss against Barnaby for UCL standing, she would add a "fraudulent" prong claim. Upon doing so (or if the Court finds she is required now), Plaintiff's UCL allegations satisfy Rule 9(b) because she alleges "the required specific details of 'the who, what, when, where, and how of the misconduct charged' by the UCL claim." *Id.* at 10 (quoting *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124-25 (9th Cir. 2009)).

The "who" is Defendants Microsoft and Barnaby, *see generally* FAC; the "what" is Microsoft's undisclosed eavesdropping and interception of website users' data for financial gain and Barnaby's permitting such interception notwithstanding its representations to the contrary, and Barnaby's affirmative misrepresentation and omission concerning that behavior, *see, e.g., id.* ¶¶ 16, 18, 49, 61; the "when" is "since Barnaby installed the Clarity and Bing trackers," *id.* ¶ 74; the "where" is on the two Barnaby websites identified, www.goodvibes.com and www.babeland.com, *id.* ¶ 11; and the "how" is through "use of the Clarity and Bing trackers," *id.* ¶ 31. These allegations are sufficient to satisfy Rule 9(b). *See In re Vizio, Inc., Consumer Priv. Litig.*, 238 F. Supp. 3d at 1229.

**B. Plaintiff Plausibly Alleges Negligence by Barnaby**

"For negligence, a plaintiff must plausibly allege: (1) the defendant had a duty, or an 'obligation to conform to a certain standard of conduct for the protection of others against unreasonable risks,' (2) the defendant breached that duty, (3) that breach proximately caused the plaintiff's injuries, and (4) damages." *In re San Francisco 49ers Data Breach Litig.*, 2024 WL 3849336, at *2 (N.D. Cal. Aug. 15, 2024) (Donato, J.) (quoting *Corales v. Bennett*, 567 F.3d 554, 572 (9th Cir. 2009)). Barnaby's claim that "the FAC's threadbare allegations constitute nothing more than bald assertions that fail to even parrot the above elements," depends on reading FAC ¶¶ 142-44 in isolation. *See* Barnaby Mot. at 11. Properly considered in the context of the entire FAC, Plaintiff plausibly alleges the elements of negligence.

"As for the first element, '[a] duty of care may arise through statute or by contract,'" or "may also be based on 'the general character of the activity in which the defendant engaged.'" *Dent v. Nat'l Football League*, 902 F.3d 1109, 1118 (9th Cir. 2018) (quoting *J'Aire Corp. v. Gregory*, 24 Cal.3d 799, 803 (1979)).

Here, as discussed below, *infra* Part II.C, CIPA establishes Barnaby's duty not to aid another in reading, attempting to read, using, or attempting to use the contents or meaning of any communication in transit. *See* Cal. Penal Code § 631(a); *Doe v. Kaiser Found. Health Plan, Inc.*, 2024 WL 1589982, at *22-23 (N.D. Cal. Apr. 11, 2024) (denying motion to dismiss negligence claim based on violation of "state wiretapping laws").

Additionally, the character of the activity in which Barnaby is engaged—selling products that implicate consumers' sexual preferences, relationships, health, and orientation—gives rise to a duty to safeguard the sensitive, highly-personal, and constitutionally-protected information it collects, *see supra* pp. 1-4 (describing the private and protected nature of the information at issue). *See In re Facebook, Inc., Consumer Privacy User Profile Litig.*, 402 F. Supp. 3d 767, 799 (N.D. Cal. 2019) ["*Facebook*"] ("Facebook had a responsibility to handle its users' sensitive information with care." (citing *Bass v. Facebook, Inc.*, 394 F. Supp. 3d 1024, 1038-39 (N.D. Cal. 2019) (finding plaintiff "plausibly plead[ed] duty of care" because "the information . . . was private," "plaintiff plausibly placed trust in Facebook to employ appropriate data security" and "[t]he lack of reasonable care in the handling of personal information can foreseeably harm the individuals providing the information"))). Barnaby further assumes and acknowledges this duty when it promises to "NEVER share[s] [its] customers' personal information with anyone." FAC ¶ 16 (quotation omitted); *see also id.* ¶¶ 17-21.

Plaintiff also alleges breach, causation, and damages. Barnaby breached its duty to Plaintiff when it "allow[ed] Microsoft to read users' online communications through its Websites, without notifying users, and without obtaining their consent." FAC ¶ 61. This breach caused Plaintiff's injury, resulting in actual damages. *See supra* Part I.A; *see also* Pl.'s Opp. to Microsoft's Mot. to Dismiss at 3-4.

**C. Plaintiff Plausibly Alleges Violations of CIPA by Barnaby**

Plaintiff alleges Barnaby's conduct violates the fourth clause of CIPA § 631(a), which makes liable any person "who aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above in this section." *See Ahringer v. LoanDepot, Inc.*, 2024 WL 1135683, at *2 (C.D. Cal. Feb. 6, 2024) (quoting Cal. Penal Code § 631(a)); *see also* FAC ¶ 51 (citing Cal. Penal Code § 631(a)); *id.* ¶ 61 ("Barnaby . . . violated and continues to violate § 631 each time it allows Microsoft to read users' online communications through its Websites, without notifying users, and without obtaining their consent."); *id.* ¶¶ 93-106.

Defendants argue Plaintiff's CIPA claims "fail for two reasons": (1) "Plaintiff does not allege that she . . . made any specific communications with Barnaby's website such that the 'content' could have conceivably been intercepted," Barnaby Mot. at 14, and (2) Plaintiff "fails to allege that Microsoft read or used the contents of any communications 'while . . . in transit,'" *id.* (quotation omitted); *see also* Microsoft Mot. at 9-12. Defendants are wrong on both points.

"[T]he term 'contents' refers to the intended message conveyed by the communication, and does not include record information regarding the characteristics of the message that is generated in the course of the communication." *Saleh v. Nike, Inc.*, 562 F. Supp. 3d 503, 517 (C.D. Cal. 2021) (quoting *In re Zynga Privacy Litig.*, 750 F.3d 1098, 1107 (9th Cir. 2014) ["*Zynga*"]); *see also Price v. Carnival Corp.*, 2024 WL 221437, at *6 (S.D. Cal. Jan. 19, 2024) ("'Contents' means 'information concerning the substance, purport, or meaning of [a] communication.'" (quoting 18 U.S.C. § 2510(8))).[4] While content generally "does not include 'record information,' such as the '"name," "address," and "subscriber number or identity" of a subscriber or customer,' when such information is merely 'generated in the course of the communication,'" "record information may constitute 'contents' where 'the record is the subject of a communication . . . .'" *Price*, 2024 WL 221437, at *6 (quoting *Zynga*, 750 F.3d at 1107) (record citation omitted).

Plaintiff alleges "Clarity . . . permits website owners to track visitors' actions by providing 'Recordings in Real Time' so that website owners can 'view[ ] live recordings that recreate user interactions with [their] website/app," including "mouse movements, clicks/taps, scrolls, [and] navigation," FAC ¶ 22, "any text used in the search bar on the Websites," *id.* ¶ 34, "when a user selects a specific product for viewing . . . the page of the specific item selected," *id.* ¶ 35, "when a user adds a product to the cart," what that product is, *id.* ¶ 36, and "when a user initiates check out and makes a purchase," what that purchase entails, *id.* ¶ 37. Further, because Clarity records users' sessions in real time, including all keystrokes, it also records users' purchase information, including credit card information. *See id.* ¶ 34, 37. And because all keystrokes are recorded, this includes information entered, even if not ultimately submitted by a user. Due to the nature of Barnaby's websites, these recorded activities reveal consumers' "sexual preferences, sexual orientation, sexual practices, and adult product preferences," *id.* ¶ 12; *see also id.* ¶¶ 13-14.

---

[4] "Courts analyzing CIPA claims apply the same definitions for the federal Wiretap Act," *Esparza v. Kohl's, Inc.*, 2024 WL 1152732, at *5 (S.D. Cal. Mar. 18, 2024) (citing *Saleh*, 562 F. Supp. 3d at 517).

"Although perhaps not all of this information is 'content' under CIPA, much of what is captured certainly is and the allegations are more than sufficient for pleading purposes." *See Tanner v. Acushnet Co.*, 2023 WL 8152104, at *3 (C.D. Cal. Nov. 20, 2023) (case involving a "Session Replay Provider" that "allegedly capture[d] a user's mouse movements, clicks, scrolls, zooms, window resizes, keystrokes, text entry, search terms, requests to view product information, and information entered into form fields and text boxes—even when the user does not ultimately submit that information" (citing *Saleh*, 562 F. Supp. 3d at 517-18) (finding allegations that Defendant "captures mouse movements, clicks, typing, scrolling, swiping, tapping, keystrokes, geographic location, IP addresses, and data entry . . . alongside a video capturing each of Plaintiff's keystrokes and mouse clicks on the website" were sufficient to show "content" at the pleading stage))).

Notably, in *Price*, another case involving Microsoft Clarity, the court reached the same conclusion. *See* 2024 WL 221437, at *6. There the "[p]laintiffs . . . alleged that '[t]he data and information intercepted by the Session Replay Code . . . includ[ed], *inter alia*, Plaintiffs' location, intent to travel, dates of travel, travel locations as well as other personal data requested to book travel plans such as passport number, driver's license number, date of birth, home address, phone number, email address and/or payment information." *Id.* (record citation omitted). Because much of this information "was 'entered into an information field or text box' provided by Carnival's website," the court found that "Plaintiffs have alleged the capture of personally identifiable information that is the subject of the communication, and thus Plaintiffs have sufficiently alleged the interception of 'contents.'" *Id.*

Here too, consumers purchase details are recorded, including name, email address, home address, phone number, credit card information, and whether the consumer is over the age of 18.[5] This information, along with "any text used in the search bar on the Websites," FAC ¶ 34, is "'entered into an information field or text box' provided by [Barnaby's] website[s]," and so is "content" within the meaning of CIPA. *See Price*, 2024 WL 221437, at *6; *see also Cousin v. Sharp Healthcare*, 702 F. Supp. 3d 967, 976 (S.D. Cal. 2023) ["*Cousin II*"] (denying motion to dismiss CIPA claims where "[p]laintiffs allege[d] that their data included

[5] *See* https://www.goodvibes.com/purchase. Because Plaintiff's FAC extensively references Defendants' websites, which are central to her claims, they are incorporated by reference and can be considered by the Court. *See Friedman v. MedJet Assistance, LLC*, 2010 WL 11463109, at *4 (C.D. Cal. May 13, 2010).

personal search queries—such as specialty healthcare providers and treatments for medical conditions—and therefore plausibly conveyed content: their [protected health information]" (citations omitted)); *James v. Walt Disney Co.*, 701 F. Supp. 3d 942, 956 (N.D. Cal. 2023) ("To the extent Disney asserts Plaintiffs must have more specificity in their complaint to show that record information is not at issue, Plaintiffs have met that threshold" by "alleg[ing] that Oracle intercepted, *e.g.*, information about the webpages they viewed and searches they conducted."), *motion to certify appeal denied*, 2024 WL 664811 (N.D. Cal. Feb. 16, 2024).

Barnaby argues "Plaintiff does not allege that she herself made any specific communications with Barnaby's website," Barnaby Mot. at 14. Barnaby is mistaken. The FAC alleges "Plaintiff . . . used Barnaby's Website[] to search for . . . adult products." FAC ¶ 97. She also made purchases from goodvibes.com, *id.* ¶ 74, which necessitated further communications. "[T]here is no requirement that [Plaintiff] specifically allege the exact contents of her communications with [Barnaby]. Rather, [Plaintiff] merely needs to show that the contents were not record information," *see Byars v. Goodyear Tire & Rubber Co.*, 654 F. Supp. 3d 1020, 1027 (C.D. Cal. 2023), which she has done. *See also James*, 701 F. Supp. 3d at 956 ("to the extent Disney suggests Plaintiffs must plead the exact communications they had with the ESPN.com website, other courts have rejected that position" (citation omitted)); *Gibson v. Planned Parenthood Fed'n of Am., Inc.*, 2024 WL 4251892, at *2 (N.D. Cal. July 2, 2024) (Donato, J.) ("Section 631 does not require the communication to include medical or confidential information. The fact of unauthorized access alone is enough to state a claim." (citing, *inter alia*, *Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1082 (C.D. Cal. 2021) (reading § 631 to protect "the internal, user-generated material of a message," regardless of confidentiality))). If the Court nevertheless finds Plaintiff's allegation that she "used Barnaby's Website[] to search for . . . adult products," FAC ¶ 97, inadequate, she could amend the Complaint to add multiple examples of specific search terms she inputted in www.goodvibes.com's search box, including specific adult products for which she was searching. But, again, this would require disclosure of her PPSI in the Complaint.

Barnaby's second argument—that Plaintiff does not allege Microsoft attempted to read her communications while in transit, Barnaby Mot. at 14-15—is unavailing. Plaintiff alleges "everything [she] did on the Website was tracked and disclosed to Microsoft instantly and automatically as it occurred." FAC ¶ 77; *see also id.* ¶¶ 31, 33, 35. "Because Plaintiff's messages, reports and/or communications were intercepted simultaneously as they were being communicated, Microsoft's interception occurred while the

messages, reports and/or communications were in transit." *Id.* ¶ 78.

"Based on these allegations, [Plaintiff] has sufficiently pled that [Microsoft] intercepted her communications 'in transit' as required under § 631(a)." *See Doe v. Eating Recovery Ctr. LLC*, 2024 WL 2852210, at *1 (N.D. Cal. June 4, 2024) (citation omitted) (rejecting argument that plaintiff "failed to allege that Meta intercepted communications 'in transit'" where "the complaint contain[ed] multiple allegations that Meta's 'transmission of information through the Pixel is instantaneous' and that Meta's code redirects users' communications 'simultaneously as the actions and communications on the website take place'"); *see also Hazel v. Prudential Fin., Inc.*, 2023 WL 3933073, at *3 (N.D. Cal. June 9, 2023) ("in transit" requirement met where "Plaintiffs allege[d] [defendant's] software 'records consumer interactions with a website in real time'" and that "[b]y embedding [defendant's] TrustedForm software . . . websites can 'surreptitiously observe and record visitors' keystrokes, mouse clicks, and other electronic communications,' beginning from the moment a user accesses the webpage" (record citations omitted)); *Ahringer*, 2024 WL 1135683, at *3 (allegation that third party "observed [plaintiffs'] keystrokes, mouse clicks, and other electronic communications 'begin[ning] the moment [they] access[ed] or interact[ed]' with LoanDepot's website" was "sufficient to meet the 'in transit' requirement" (citations and quotations omitted)).

Barnaby also argues it "cannot be liable" under CIPA because its "privacy policies" supposedly "make clear that Plaintiff consented to the very acts she alleges as violations here." Barnaby Mot. at 13; *see also id.* at 2; Microsoft Mot. at 3-4; *id.* at 7-8 n.3 ("The Barnaby privacy policies . . . show that Barnaby disclosed that it collects and shares with certain third parties data about usage of its Websites." (record citation omitted)). The privacy policy Barnaby references is hyperlinked in "a banner at the bottom of the [Barnaby Websites' home] page[s] representing that Barnaby uses cookies '[i]n order to give you a better service,'" *see* FAC ¶ 40. "However, users need not affirmatively click the 'I Agree' button to continue using the Websites, and cookies will be employed regardless of whether a user affirmatively agrees." *Id.* Plaintiff alleges she "did not consent to the messages, reports, or communications between herself and Barnaby being shared with Microsoft." FAC ¶ 82; *see also id.* ¶¶ 39, 45, 61-63, 72, 101, 103-104, 111, 116, 122, 139. "[E]ven when a website contains privacy clauses, a plaintiff's pleading that she did not consent to the recording of private communications is sufficient to survive a motion to dismiss." *Gutierrez v. Converse Inc.*, 2023 WL 8939221, at *2 (C.D. Cal. Oct. 27, 2023) (citations omitted); *see also Kauffman v. Papa John's*

*Int'l, Inc.*, 2024 WL 171363, at *6 (S.D. Cal. Jan. 12, 2024) (allegation that "'Defendant never sought consent, and Plaintiff and Class Members never provided consent, for the unauthorized access and reading and recording of their electronic communications prior to it occurring,'" was "sufficient to meet [plaintiff's] burden to plead that he did not provide prior consent to the recording" (record quotation and citations omitted)).

Moreover, "[c]onsent is only effective if the person alleging harm consented to 'the particular conduct, or to substantially the same conduct' and if the alleged tortfeasor did not exceed the scope of that consent." *In re Google Location Hist. Litig.*, 428 F. Supp. 3d 185, 190 (N.D. Cal. 2019) (quoting *Opperman v. Path, Inc.*, 205 F. Supp. 3d 1064, 1072-73 (N.D. Cal. 2016) (citation and quotation marks omitted)). That Barnaby "'may collect certain limited non-personally identifying information your browser makes available whenever you visit the Website' and use 'cookies and other identifying technologies' including technologies from 'partners'" to "'understand the online behaviors and interests of'" website users "and 'measur[e] the effectiveness of advertising campaigns[ and] analyze site traffic and trends,'" Microsoft Mot. at 3, is insufficient to inform users that an *undisclosed third party* will have access to a *complete session replay*, including PPSI, and personally identifying information entered at purchase. Nor does it inform users that all this information is conveyed together with their MUIDs, which "enables Microsoft to identify the person who has communicated with Barnaby through the Websites and thus to connect a Website user's PPSI to their identity." FAC ¶ 46.

Where, as here, the challenged conduct was not sufficiently disclosed in the applicable privacy policy, courts decline to find consent. *See Yockey v. Salesforce, Inc.*, 688 F. Supp. 3d 962, 977 (N.D. Cal. 2023) ("the policy's language does not encompass the conduct at issue" because it "does not disclose that Salesforce, via the Sneak Peek feature, obtains those communications while users type them"); *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 793 (N.D. Cal. 2022) (Meta did not establish consent where its "policies notify Facebook users that Meta collects and uses their personal data, including data about their browsing behavior on some third-party websites, at least in part for targeted advertising," but did "not . . . . specifically indicate that Meta may acquire *health data* obtained from Facebook users' interactions with their *medical providers' websites*" (record citations omitted)); *Doe v. Cnty. of Santa Clara*, 2024 WL 3346257, at *7 (N.D. Cal. July 8, 2024) (although "disclosures may . . . indicate that some personally identifiable

information might be disclosed 'typically' in aggregated form for defendant's purposes[,] . . . nothing in the provisions . . . disclose the disclosure of PII, much less [personal health information], to third parties for those third parties' own use" (citing *Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d 1064, 1078 (N.D. Cal. 2023))); *Matera v. Google Inc.*, 2016 WL 5339806, at *18 (N.D. Cal. Sept. 23, 2016) (Google's "Privacy Policy can not, and does not establish consent to Google's alleged interception, scanning, and analysis practices" because it "fails to disclose the fact that Google intercepts, scans, and analyzes email to create targeted advertising and user profiles for non-Gmail users"); *In re Google Inc.*, 2013 WL 5423918, at *14 (N.D. Cal. Sept. 26, 2013) ("a reasonable Gmail user who read the Privacy Policies would not have necessarily understood that her emails were being intercepted to create user profiles or to provide targeted advertisements").

Instead, Barnaby's privacy policy promises *not* to engage in the conduct alleged here. The policy expressly states it will only "disclose . . . information . . . that does not identify any individual." Barnaby Mot. at 2 (quoting Barnaby's privacy policy). It further states Barnaby will "NEVER share [its] customers' personal information with anyone," FAC ¶ 16 (quoting privacy policy), and "undertake[s] substantial efforts to protect the confidentiality of the identity, preferences, and other information it has collected about individual [users] and . . . will not knowingly allow access to this information to anyone outside [Barnaby],'" *id.* ¶ 18 (quoting privacy policy). Such representations preclude a finding of consent at this stage. *See A.S. v. SelectQuote Ins. Servs.*, 2024 WL 3881850, at *4 (S.D. Cal. Aug. 19, 2024) (privacy policy that the defendant argued "clearly informs visitors that [defendant] uses analytics technologies to collect users' information," and "that their information may be shared with third parties for various purposes, including marketing services," but "also promis[ing] that its site and [plaintiff's] entries are '100% secure' and that it will 'never sell your information,'" created "a question of fact that cannot be resolved at th[e] [motion to dismiss] stage" (record quotations omitted)); *Doe v. FullStory, Inc.*, 712 F. Supp. 3d 1244, 1254 (N.D. Cal. 2024) (CIPA "claims will not be dismissed for any defendant based on consent" where the "Privacy Policy disclosed some use of some tracking features," but other "disclosures and assertions indicate[d] that Favor would not disclose (or sell or use for marketing) users' personal information"); *cf. McCoy v. Alphabet, Inc.*, 2021 WL 405816, at *6 (N.D. Cal. Feb. 2, 2021) (If "the contract language at issue is reasonably susceptible to more than one interpretation, with one of those interpretations suggesting consent and another belying it, the Court cannot

decide the consent issue in [Defendant's] favor at the motion to dismiss stage." (quoting *Facebook*, 402 F. Supp. 3d at 789)).

Indeed, this Court has held in similar circumstances that "whether . . . privacy policies establish valid consent," is a "disputed issue[] that need[s] further factual development." *See McDonald*, 385 F. Supp. 3d at 1037; *see also Frasco v. Flo Health, Inc.*, 2024 WL 4280933, at *2 (N.D. Cal. Sept. 23, 2024) (Donato, J.) (at summary judgment, finding "consent is typically a fact-bound inquiry, and the record before the Court demonstrates a number of factual disputes that preclude summary judgment" where the parties "highlight different portions of various privacy policies . . . to disagree about the scope of plaintiffs' consent to sharing data with Google"). Barnaby's only case is inapposite. *See* Barnaby Mot. at 13. In *Silver v. Stripe Inc.*, the privacy policy stated, "Instacart may share 'information about you and your order with ***the other parties*** who help enable the service' and that '[t]his includes . . . the ***payment processing partner(s)*** that we use to validate and charge your credit card . . . ." 2021 WL3191752, at *2 (N.D. Cal. July 28, 2021). "No one dispute[d] that [defendant] [wa]s a payment processing partner." *Id.* (record citations omitted). The privacy policy also stated "that Instacart may 'disclose the following categories of personal information ***to third parties*** for our commercial purposes: identifiers, demographic information, commercial information, relevant order information, internet activity, geolocation data, sensory information, and inferences,'" which is the same type of information plaintiff took issue with Instacart disclosing to the defendant. *See id.*, at *1-*2. Thus, unlike here, the privacy policy in *Silver* stated it was disclosing personal information with the precise category of third parties to which the defendant indisputably belonged. *See id.*

## CONCLUSION

The Court should deny Barnaby's motion, but if the Court is inclined to grant the motion in any respect, Plaintiff requests dismissal be without prejudice and with leave to amend.

Dated: September 27, 2024

Respectfully Submitted,

/s/ Melanie R. Monroe

**FITZGERALD MONROE FLYNN PC**
JACK FITZGERALD
*jfitzgerald@fmfpc.com*
MELANIE R. MONROE
*mmonroe@fmfpc.com*

TREVOR FLYNN
*tflynn@fmfpc.com*
PETER GRAZUL
*pgrazul@fmfpc.com*
2341 Jefferson Street, Suite 200
San Diego, California 92110
Phone: (619) 215-1471

***Counsel for Plaintiff***