DAVIS WRIGHT TREMAINE LLP
James H. Moon (SBN 268215)
jamesmoon@dwt.com
Daniel H. Leigh (SBN 310673)
danielleigh@dwt.com
Sancho Accorsi (SBN 329413)
sanchoaccorsi@dwt.com
865 South Figueroa Street, 24th Floor
Los Angeles, CA 90017-2566
Telephone: (213) 633-6800
Fax: (213) 633-6899

*Attorneys for Defendant Microsoft Corporation*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

STELLA TATOLA,

Plaintiff,

v.

BARNABY LTD., LLC, and MICROSOFT CORPORATION,

Defendants.

Case No. 3:24-cv-03789-JD

**DEFENDANT MICROSOFT CORPORATION'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT**

Assigned to the Honorable James Donato
Courtroom 11

Hearing
Date: October 24, 2024
Time: 10:00 a.m.

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ... 1

II. PLAINTIFF LACKS ARTICLE III STANDING ... 1

A. Plaintiff Does Not Allege Injury to a Traditional Privacy Interest. ... 1

1. Clarity and UET Do Not Collect Personally Identifying Information. ... 1

2. The Information Allegedly Collected Is Not Traditionally Protected. ... 3

3. Plaintiff Does Not Allege Collection of *Her* Private Information. ... 4

B. Plaintiff Does Not Allege Any Economic Injury. ... 4

C. Plaintiff Does Not Allege Injury Fairly Traceable to Microsoft. ... 5

III. PLAINTIFF FAILS TO STATE A CLAIM ... 5

A. Plaintiff's CIPA Claim Fails. ... 5

B. Plaintiff's Federal Wiretap Act Claim Fails. ... 7

C. Plaintiff's Invasion of Privacy Claims Fail. ... 7

D. Plaintiff's UCL Claim Fails. ... 9

E. Plaintiff's Unjust Enrichment Claim Fails. ... 10

F. Equitable Remedies Are Unavailable to Plaintiff. ... 10

IV. CONCLUSION ... 10



DAVIS WRIGHT TREMAINE LLP
LAW OFFICES
865 S. Figueroa St., Suite 2400
Los Angeles, CA 90017

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Augustine v. Great Wolf Resorts, Inc.*,
2024 WL 3450967 (S.D. Cal. July 18, 2024) ........ 6

*Brown v. Google LLC*,
525 F. Supp. 3d 1049 (N.D. Cal. 2021) ........ 9

*Bryars v. Goodyear Tire & Rubber Co.*,
654 F. Supp. 3d 1020 (C.D. Cal. 2023) ........ 6

*Cook v. GameStop, Inc.*,
689 F. Supp. 3d 58 (W.D. Pa. 2023) ........ *passim*

*Cousin v. Sharp Healthcare*,
702 F. Supp. 3d 967 (S.D. Cal. 2023) ........ 6, 8

*Czerniak v. City of Milwaukee*,
669 F. Supp. 247 (E.D. Wis. 1987) ........ 4

*Doe I v. Google LLC*,
2024 WL 3490744 (N.D. Cal. July 22, 2024) ........ 5

*Doe v. Kaiser Found. Health Plan, Inc.*,
2024 WL 1589982 (N.D. Cal. Apr. 11, 2024) ........ 7

*Folgelstrom v. Lamps Plus, Inc.*,
195 Cal. App. 4th 986 (2011) ........ 8

*Hammerling v. Google LLC*,
615 F. Supp. 3d 1069 (N.D. Cal. 2022) ........ 8

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) ........ 8

*In re Finjan Holdings, Inc.*,
58 F.4th 1048 (9th Cir. 2023) ........ 2

*In re Meta Pixel Tax Filing Cases*,
2024 WL 1251350 (N.D. Cal. Mar. 25, 2024) ........ 10

*In re Nickelodeon Consumer Priv. Litig.*,
827 F.3d 262 (3d Cir. 2016) ........ 9

*James v. Allstate Ins. Co.*,
2023 WL 8879246 (N.D. Cal. Dec. 22, 2023) ........ 7

*Low v. LinkedIn Corp.*,
900 F. Supp. 2d 1010 (N.D. Cal. 2012) .......... 8

*Lowe v. Clift*,
2007 WL 2112672 (E.D. Tenn. July 19, 2007) .......... 4

*McClung v. AddShopper, Inc.*,
2024 WL 189006 (N.D. Cal. Jan. 17, 2024) .......... 10

*McDonald v. Kiloo ApS*,
385 F. Supp. 3d 1022 (N.D. Cal. 2019) .......... 8

*Mikulsky v. Bloomingdale's, LLC*,
713 F. Supp. 3d 833 (S.D. Cal. 2024) .......... 10

*Mikulsky v. Noom, Inc.*,
2024 WL 251171 (S.D. Cal. Jan. 22, 2024) .......... 1

*Murphy v. Kochava Inc.*,
2023 WL 6391061 (D. Idaho Oct. 2, 2023) .......... 5

*Paris Adult Theatre I v. Slaton*,
413 U.S. 49 (1973) .......... 3

*Popa v. PSP Grp., LLC*,
2023 WL 7001456 (W.D. Wash. Oct. 24, 2023) .......... 1, 3

*Price v. Carnival Corp.*,
712 F. Supp. 3d 1347 (S.D. Cal. 2024) .......... 6

*Rodriguez v. Google LLC*,
2021 WL 2026726 (N.D. Cal. May 21, 2021) .......... 7

*Saeedy v. Microsoft Corp.*,
2023 WL 8828852 (W.D. Wash. Dec. 21, 2023) .......... 2, 5

*Hubbard v. Google LLC*,
2024 WL 3302066 (N.D. Cal. July 1, 2024) .......... 10

*Sussman v. Am. Broad. Cos., Inc.*,
186 F.3d 1200 (9th Cir. 1999) .......... 7

*Tanner v. Acushnet Co.*,
2023 WL 8152104 (C.D. Cal. Nov. 20, 2023) .......... 6

*Warth v. Seldin*,
422 U.S. 490 (1975) .......... 6

*Winsor v. Sequoia Benefits & Ins. Servs., LLC*,
62 F.4th 517 (9th Cir. 2023) .......... 5



DAVIS WRIGHT TREMAINE LLP
LAW OFFICES
865 S. Figueroa St., Suite 2400
Los Angeles, CA 90017

*Zebulon Enters., Inc. v. DuPage Cnty.*,
438 F. Supp. 3d 881 (N.D. Ill. 2020) .......... 3

**Rules**

Civil Local Rule 79-5 .......... 4

Federal Rule of Civil Procedure Rule 12 .......... 1



DAVIS WRIGHT TREMAINE LLP
LAW OFFICES
865 S. Figueroa St., Suite 2400
Los Angeles, CA 90017

# I. INTRODUCTION

Plaintiff fails to plead that Microsoft's Clarity or UET services collected personally identifying information ("PII") about her or that she has a reasonable expectation of privacy in the anonymous online shopping data allegedly collected. To try to salvage Article III standing, Plaintiff's Opposition relies on facts she did not allege and legal positions that cannot withstand serious scrutiny. Plaintiff now claims that Clarity and UET collected her PII, but her First Amended Complaint ("FAC") and the material incorporated in it show otherwise. *See* FAC ¶ 24; RJN, Ex. A at 2 (Clarity collects "anonymous data"); *id.*, Ex. B at 1 (Microsoft's cookies collect "nonpersonally identifiable information"). She also fails to grapple with authorities finding no reasonable expectation of privacy in online shopping on public websites. And she ignores that Microsoft did not control whether her data was collected and did nothing to impair her ability to sell her data. These issues are fatal to Plaintiff's attempts to invoke this Court's jurisdiction.

Plaintiff's efforts to show that she alleged plausible claims fare no better. Plaintiff cannot save her CIPA claim because she does not plead that Microsoft attempted to read the content of her communications while in transit. Plaintiff fails to allege a Wiretap Act claim because she does not allege that Microsoft's provision of ubiquitous website advertising and analytics services have a primarily tortious purpose. And Plaintiff's invasion of privacy claims fail because, again, she has no reasonable expectation of privacy, and the alleged routine collection of online shopping data is not highly offensive. Plaintiff's remaining claims fail with the others.

The Court should therefore dismiss Plaintiff's FAC under Rule 12(b)(1) and/or (b)(6).

# II. PLAINTIFF LACKS ARTICLE III STANDING

## A. Plaintiff Does Not Allege Injury to a Traditional Privacy Interest.

### 1. Clarity and UET Do Not Collect Personally Identifying Information.

Plaintiff does not dispute that she lacks Article III standing to bring her claims against Microsoft unless she can show that Microsoft collected her PII. *See Popa v. PSP Grp., LLC*, 2023 WL 7001456, at *4 (W.D. Wash. Oct. 24, 2023); *Cook v. GameStop, Inc.*, 689 F. Supp. 3d 58, 66 (W.D. Pa. 2023); *Mikulsky v. Noom, Inc.*, 2024 WL 251171, at *4 (S.D. Cal. Jan. 22, 2024). She cannot show this, and her attempts to do so in her Opposition briefing contradict her

own allegations and the webpages she incorporates by reference into her FAC. *See* Opp. 2. Plaintiff's Opposition focuses on Microsoft's MUID cookie—but the FAC shows that a MUID is an anonymous alphanumeric string generated by Microsoft tied to a unique web browser, not a real-world identity. FAC ¶ 24; *id.* p. 6–10 (screenshots showing MUIDs). The material Plaintiff incorporates into her FAC confirms that Microsoft cookies, including the MUID, send Microsoft "nonpersonally identifiable information," RJN, Ex. B at 1, and that Clarity, which uses the MUID cookie, FAC ¶ 24, collects "anonymous data," RJN, Ex. A at 2. No allegations in the FAC contradict this—and in any event, specific statements in the documents incorporated by reference control. *See In re Finjan Holdings, Inc.*, 58 F.4th 1048, 1052 n.1 (9th Cir. 2023).[1]

Because she knows that a MUID is anonymous, Plaintiff advances the legally insufficient conclusion that Microsoft has the ability to somehow connect a MUID to a person's identity. *See* Opp. 2 (citing FAC ¶¶ 24, 29, 46). The Court should not accept Plaintiff's speculation. And courts recognize that the mere alleged *ability* to tie an anonymous identifier to a person's identity is not the same as actually doing so and does not establish standing. *See Saeedy v. Microsoft Corp.*, 2023 WL 8828852, at *5 n.6 (W.D. Wash. Dec. 21, 2023) (allegation that data *could* be deanonymized insufficient); *see also Cook*, 689 F. Supp. 3d at 69 (dismissing Wiretap Act claim because "[i]t's not enough for Ms. Cook to allege the potential capabilities of the Session Replay Code"). For instance, in *Gary v. Dynatrace, Inc.*, the court refused to rely on plaintiffs' speculation to manufacture standing: "Plaintiffs have generally alleged that Defendants could combine website visitor information obtained from multiple clients to create profiles of a single user's activities across websites, but neither has alleged accessing any other websites that utilize Defendants' Session Replay technology." 2024 WL 4002766, at *3 (D. Mass. Aug. 22, 2024). The same is true here.

Plaintiff then resorts to arguing that she has standing because she now asserts she entered PII into www.goodvibes.com when she made a purchase. But she admits that is "not alleged

[1] Plaintiff does not oppose Microsoft's request that the Court deem the webpages Plaintiff quotes and cites in the FAC to be incorporated by reference into the FAC. The Court should reject Plaintiff's request in her Opposition for incorporation by reference of a webpage because she did not quote, cite, or mention that webpage in her FAC. *See* Opp. 7 n.5.

expressly" in her FAC. Opp. 2 n.1; *Gary*, 2024 WL 4002766, at *3 (no standing based on PII where "Plaintiff[s have not] alleged [they] entered that type of information" into website). And Plaintiff does not and cannot truthfully allege that Microsoft *collected* any unalleged and unidentified PII that she entered into the website or that it *connected* any such information to her other browsing data. The documents she incorporates by reference into her FAC directly contradict any such inference. *See* RJN, Ex. A at 2; *id.*, Ex. B at 1.[2]

**2. The Information Allegedly Collected Is Not Traditionally Protected.**

Even if Plaintiff had plausibly alleged that Microsoft could identify her from the information it allegedly collected, Plaintiff has no answer for—and does not engage with—the many cases establishing that there is no privacy interest in online shopping data. Courts recognize that, because shopping in brick-and-mortar stores is not a private activity, online shopping also is not private—it is simply an online public marketplace rather than a brick-and-mortar store. *See, e.g.*, *Popa*, 2023 WL 7001456, at *4; *Cook*, 689 F. Supp. 3d at 66; *Thomas*, 2024 WL 2060140, at *2.

Plaintiff points to the adult nature of Barnaby's websites. Plaintiff is correct that a right to privacy may exist in sexual matters, but that right does not extend to *public* and *commercial* activities just because they involve sexual content. *See* Mot. 13; *Paris Adult Theatre I v. Slaton*, 413 U.S. 49, 65 (1973) ("[I]t is unavailing to compare a theater, open to the public for a fee, with the private home of *Stanley v. Georgia* and the marital bedroom of *Griswold v. Connecticut*.") (citations omitted). And Plaintiff's claim that "adult stores and purchases *are* traditionally private," Barnaby MTD Opp. 2 n.1, contradicts common sense and longstanding precedent. Adult businesses still have clerks, security cameras, and other patrons—just like any other business—and courts explicitly reject the sliding scale of reasonable privacy expectations that Plaintiff imagines. *Zebulon Enters., Inc. v. DuPage Cnty.*, 438 F. Supp. 3d 881, 896 (N.D. Ill. 2020) ("Even the so-called secluded areas of a public adult entertainment establishment do not

[2] In fact, Microsoft masks content in input boxes on websites and PII to prevent its collection by Clarity. *See* https://learn.microsoft.com/en-us/clarity/setup-and-installation/clarity-masking. A MUID is a cookie, FAC ¶ 24, and internet users can clear cookies at any time or set their browsers to a private mode that uses the browser without any prior cookies and deletes any new cookies when the browser is closed (e.g., InPrivate mode for Edge).

provide a reasonable expectation of privacy."); *Lowe v. Clift*, 2007 WL 2112672, at *4 (E.D. Tenn. July 19, 2007) (adult bookstore); *Czerniak v. City of Milwaukee*, 669 F. Supp. 247, 249 (E.D. Wis. 1987) (adult-movie viewing booths). Nor can Plaintiff argue that adult websites are more private than adult brick-and-mortar stores. Opp 11 n.6. As one court rightly put it: "Given the inherent nature of the internet, a number of courts have found that consumers do not have a reasonable expectation of privacy over their activity in that space." *Thomas*, 2024 WL 2060140, at *2.

**3. Plaintiff Does Not Allege Collection of *Her* Private Information.**

Even if Plaintiff had alleged that Microsoft *generally* collects information sufficient to establish standing (she does not), her Opposition concedes that she pleads next to nothing about *her* use of www.goodvibes.com. Instead, she claims that she cannot plead any such details because doing so would violate her privacy. *See* Opp. 2 n.1; *but see* Civil L.R. 79-5. But to decide Article III standing, "the Court must examine the nature of the information that [a defendant] allegedly intercepted and determine whether the interception of that kind of information amounts to an invasion of privacy interests that have been historically protected." *Cook*, 689 F. Supp. 3d at 65. Plaintiff may not use privacy as a sword and shield to invoke the Court's jurisdiction by omitting the facts necessary to establish jurisdiction.

**B. Plaintiff Does Not Allege Any Economic Injury.**

Plaintiff has not alleged facts establishing economic injury because she does not allege that Microsoft impaired the value of her data or that she was prevented from participating in the market for her data. *See* Mot. 8–9. Plaintiff's Opposition offers no material response. She fails to distinguish *Ji v. Naver Corp.*, which accurately states the rule that "to proceed on an economic injury theory, data privacy plaintiffs must allege the existence of a market for their data and the impairment of the ability to participate in that market." 2022 WL 4624898, at *9 (N.D. Cal. Sept. 30, 2022). Plaintiff argues that she asserts "different damages theories and models," Opp. 4, but she never explains what those theories and models are and does not allege any of them in



DAVIS WRIGHT TREMAINE LLP
LAW OFFICES
865 S. Figueroa St., Suite 2400
Los Angeles, CA 90017

her FAC. Plaintiff cannot amend her FAC through her Opposition brief. *See Murphy v. Kochava Inc.*, 2023 WL 6391061, at *10 (D. Idaho Oct. 2, 2023).[3]

Plaintiff also focuses on allegations that Microsoft received an economic benefit. Opp. 3–4. But these alleged *benefits to Microsoft* do not establish an "impairment of [*Plaintiff's*] ability to participate" in a market for her data. *See Saeedy*, 2023 WL 8828852, at *6 (allegation that data "has monetary value" insufficient); *Doe I v. Google LLC*, 2024 WL 3490744, at *7 (N.D. Cal. July 22, 2024) (plaintiff "fail[ed] to explain why any alleged acquisition of personal information would necessarily mean that the plaintiffs could not still sell their data"). The only allegation Plaintiff cites about her alleged *injury* is her assertion that she "lost money." Opp. 4 (citing FAC ¶ 134). But this is both conclusory and insufficient under *Ji*.

### C. Plaintiff Does Not Allege Injury Fairly Traceable to Microsoft.

Plaintiff fails to rebut—or engage at all with—Microsoft's case law establishing that Barnaby's discretion in determining privacy settings on its website obviates injury traceable to Microsoft. Plaintiff's argument that she alleged injury caused by "the combination of improper behavior" by Barnaby and Microsoft misstates her FAC and the law. Opp. 3. The FAC acknowledges that Barnaby had discretion in the privacy settings on its Websites. FAC ¶¶ 26, 45 & n.8. Under controlling law, this prevents any (nonexistent) injury from being fairly traceable to Microsoft. *Winsor v. Sequoia Benefits & Ins. Servs., LLC*, 62 F.4th 517, 525 (9th Cir. 2023).

## III. PLAINTIFF FAILS TO STATE A CLAIM

### A. Plaintiff's CIPA Claim Fails.

Plaintiff's Opposition fails to identify any of her data that Microsoft allegedly collected that would satisfy CIPA's "content" requirement. She admits that "not all of th[e] information" that she alleges Microsoft collected is "content" under CIPA. Opp. 6. In fact, none of it—mouse movements, clicks, scrolls, page navigation, product views and purchases, FAC ¶¶ 22, 33–37—is

---

[3] Plaintiff's laundry list of relief identified in her initial disclosures, Opp. 4 n.2, also cannot help her establish constitutionally cognizable economic injury—many of those categories, like statutory damages, disgorgement, and injunctive relief, are remedies, not injuries to Plaintiff, and many are not even mentioned in her FAC (*e.g.*, the difference in value of products purchased on Barnaby's sites given Barnaby's data collection; the "value to class members" of the data collection; and the "cost" of locating and deleting Plaintiff's data).

anything more than non-content "record" information. Plaintiff does not address Microsoft's cases holding just that. Mot. 10 (citing *Yoon* and *Katz-Lacabe*). Plaintiff cites bare allegations that she and "other California Subclass Members used Barnaby's Websites to search for and/or purchase adult products." Opp. 7 (citing FAC ¶ 97). But she does not in any way describe the nature of any such potential unidentified communications—much less that they involved use of the search bar on Barnaby's website—and she cannot rely on hypothetical facts of other absent class members to state a claim. *See Cook*, 689 F. Supp. 3d at 71 (dismissing Wiretap Act claim where plaintiff pled "she typed 'search words into the search bar,' but doesn't say what those searches were, whether she hit 'enter' after typing the searches, and whether that action generated a new URL that could be recorded by the Session Replay Code"); *Warth v. Seldin*, 422 U.S. 490, 499 (1975) ("[A named] plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties.").

In contrast, Plaintiff's cited cases each addressed specific allegations that *plaintiffs themselves* sent contents of communications—not record information—to the defendant website. *See, e.g.*, *Cousin v. Sharp Healthcare*, 702 F. Supp. 3d 967, 976 (S.D. Cal. 2023) (search queries for "specialty healthcare providers and treatment for medical conditions"); *Bryars v. Goodyear Tire & Rubber Co.*, 654 F. Supp. 3d 1020, 1027 (C.D. Cal. 2023) ("website visitors share sensitive personal information" by chat); *Price v. Carnival Corp.*, 712 F. Supp. 3d 1347, 136061 (S.D. Cal. 2024) (substantive travel and location details). Plaintiff also cites *Tanner v. Acushnet Co.*, 2023 WL 8152104 (C.D. Cal. Nov. 20, 2023), which other courts have found "unpersuasive . . . because [it] do[es] not explain *why* the alleged captured data in each case are 'contents' of communications." *Augustine v. Great Wolf Resorts, Inc.*, 2024 WL 3450967, at *6 n.2 (S.D. Cal. July 18, 2024).

Even if Plaintiff's interactions with the Website could be considered "content," Plaintiff does not address her failure to allege that Microsoft attempted to *read or learn* the contents of any of her communications *while in transit*. *See* Mot. 11. All Plaintiff points to is her allegations that her website interactions were "intercepted simultaneously." Opp. 8. But they do not establish that Microsoft attempted to *read or learn* the contents of any communications of



DAVIS WRIGHT TREMAINE LLP
LAW OFFICES
865 S. Figueroa St., Suite 2400
Los Angeles, CA 90017

hers *while* they were in transit. *James v. Allstate Ins. Co.*, 2023 WL 8879246, at *3 (N.D. Cal. Dec. 22, 2023) ("Plaintiff's allegation that 'this data is stored or can be accessed by Heap' is insufficient to support a plausible interference Heap attempted to read or learn the contents of the communication while in transit.").

**B. Plaintiff's Federal Wiretap Act Claim Fails.**

The Wiretap Act claim fails because Plaintiff points to no allegations that establish that Microsoft's software falls into the "tortious purpose" exception to the one-party consent rule. Plaintiff pleads that Microsoft's purpose was to provide a service to Barnaby. FAC ¶¶ 22–25, 27–28. And the fact that Microsoft provided settings that website operators could use to comply with privacy laws, *see* Opp. 9 (citing FAC ¶ 26), underscores Microsoft's *lack* of a tortious intent. Plaintiff alleges no facts supporting that "Microsoft's interception was for the purpose," never mind the *primary purpose, see Rodriguez v. Google LLC*, 2021 WL 2026726, at *6 n.8 (N.D. Cal. May 21, 2021), "of violating *users*' right to privacy," *see* Opp. 9 (quoting FAC ¶ 69). Plaintiff's theory of tortious purpose—that Microsoft collected PII without consent—is not separate and independent from the underlying Wiretap Act claim that Plaintiff alleges. *See Sussman v. Am. Broad. Cos., Inc.*, 186 F.3d 1200, 1202 (9th Cir. 1999) ("[T]he focus is not upon whether the interception itself violated another law; it is upon whether the purpose for the interception—its intended use—was criminal or tortious.") (cleaned up); *see also Doe v. Kaiser Found. Health Plan, Inc.*, 2024 WL 1589982, at *10 (N.D. Cal. Apr. 11, 2024) (no tortious purpose because "collection of personal information (without consent or compensation) . . . inheres in the alleged interception").[4]

**C. Plaintiff's Invasion of Privacy Claims Fail.**

Because she cannot argue that she has a reasonable expectation of privacy in online shopping data, or that alleged collection of shopping data is highly offensive, Plaintiff resorts to mischaracterizing the law and ignoring Barnaby's disclosures. To start, Plaintiff is incorrect that

[4] Plaintiff's reliance on *In re Toys R Us, Inc., Priv. Litig.*, is misplaced. Opp. 9. In that case there was "no evidence concerning [defendant's] purpose when it allegedly intercepted plaintiffs' electronic communications[.]" *See* 2001 WL 34517252, at *8 (N.D. Cal. Oct. 9, 2001). Here, Plaintiff alleges a *commercial*, non-tortious purpose—pleading herself out of the tortious purpose exception. FAC ¶¶ 22–28.

whether an intrusion is highly offensive cannot be resolved at the pleading stage. *See* Opp. 10. Courts routinely dismiss invasion of privacy claims for failure to adequately plead a highly offensive intrusion. *See, e.g.*, *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1091 (N.D. Cal. 2022); *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1025 (N.D. Cal. 2012).

The collection of data on shopping is routine commercial behavior commonly accepted in society, making dismissal proper here. *See Gary*, 2024 WL 4002766, at *4 ("As a practical matter, [session replay provider's] role was akin to a market research firm hired by a retailer to gather information by observing customers as they shop in a space controlled by the retailer."); *Folgelstrom v. Lamps Plus, Inc.*, 195 Cal. App. 4th 986, 992 (2011) (no privacy violation where conduct "is not an egregious breach of social norms, but routine commercial behavior"); *Cook*, 689 F. Supp. 3d at 66 ("Product preference information" that is "no different from what GameStop employees would have been able to observe if Ms. Cook had gone into a brick-and-mortar store and began browsing the inventory" is "not personal information").

Plaintiff's cases—unlike her allegations and theory—involved pervasive tracking of identifiable human beings across the internet, on both commercial and non-commercial websites, including to compile personal profiles, and in contravention of privacy statements. *See, e.g.*, *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 603 (9th Cir. 2020) (collection of comprehensive browsing history across internet and "compil[ation of] these browsing histories into personal profiles which are sold to advertisers to generate revenue"); *McDonald v. Kiloo ApS*, 385 F. Supp. 3d 1022, 1029 (N.D. Cal. 2019) (third parties could "identify users – including children – at the individual level" and "monitor, profile, track [them] over time, across devices, and across the Internet") (cleaned up).

Commercial information is not transformed into the proper subject of invasion of privacy claims simply because the commerce is of a sexual nature. *See supra* § II.A.2. Plaintiff relies on *Frasco v. Flo Health, Inc.*, but that case involved specific allegations that reproductive health information was shared with Defendants—not shopping information. 2022 WL 21794391, at *1 (N.D. Cal. June 6, 2022); *see also Cousin*, 702 F. Supp. 3d at 974 ("medical conditions" shared with third parties).



DAVIS WRIGHT TREMAINE LLP
LAW OFFICES
865 S. Figueroa St., Suite 2400
Los Angeles, CA 90017

Plaintiff also cannot transform collection of non-private shopping data into a privacy violation by misrepresenting Barnaby's statements on privacy. Plaintiff cherry-picks Barnaby's website to suggest that Barnaby promised not to use software like Clarity and UET. Opp. 10–12. But Barnaby discloses that it "may collect certain limited non-personally identifying information your browser makes available whenever you visit the Website" and use "cookies and other identification technologies," including technologies from "partners." RJN, Ex. C at 2; *id.*, Ex. D at 2. Barnaby says that it may store PII on third-party servers. *Id.*, Ex. C at 3; *id.*, Ex. D at 4. And it discloses that it contracts with "[s]ervice [p]roviders" for, among other things, "marketing and promotions functions" and provides these service providers "the information necessary for them to perform their services on our behalf." *Id.*, Ex. C at 2–3; *id.*, Ex. D at 3.

Barnaby's privacy policies do not promise anything to the contrary. Plaintiff argues that Barnaby promised never to share its customers' "personal information," Opp. 10, and, indeed, Microsoft does not receive any PII from Barnaby, RJN, Ex. A at 2; *id.*, Ex. B at 1. Plaintiff also quotes Barnaby's general statement that it does not "knowingly allow access" to personal information. Opp. 10. But again, Microsoft does not receive PII, and Plaintiff omits that Barnaby qualified the statement ("except as otherwise set forth in this Privacy Policy," RJN, Ex. C at 3; *id.*, Ex. D at 3), to allow sharing information with service providers for marketing purposes. None of Plaintiff's cases involved comparable disclosures regarding data collection as Barnaby's privacy policy here. *See Brown v. Google LLC*, 525 F. Supp. 3d 1049, 1055 (N.D. Cal. 2021); *In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d 262, 269, 294 (3d Cir. 2016) (absolute promise not to collect "ANY" of the data at issue).

**D. Plaintiff's UCL Claim Fails.**

Plaintiff's attempt to establish UCL statutory standing again relies on facts she fails to plead. She argues there is a market for her data and that Microsoft impeded her ability to participate in that market, but she cites no allegations in the FAC showing this to be the case. *See* Opp. 13. Nor could she, as the FAC does not mention a "market" for personal data or impairment of either Plaintiff's access to that market or the value of her data. *See supra* § II.B.



DAVIS WRIGHT TREMAINE LLP
LAW OFFICES
865 S. Figueroa St., Suite 2400
Los Angeles, CA 90017

Plaintiff also does not dispute that her UCL claims would fail if her other claims are dismissed, as Microsoft has shown they should be. *See* Mot. 14.

**E. Plaintiff's Unjust Enrichment Claim Fails.**

Plaintiff argues that her unjust enrichment claim is cognizable as a "quasi-contract" claim. Opp. 14. But she fails to allege that a quasi-contract exists between her and Microsoft based on her use of a third-party website. *See McClung v. AddShopper, Inc.*, 2024 WL 189006, at *4 (N.D. Cal. Jan. 17, 2024) (dismissing unjust enrichment claim because plaintiffs did not "adequately explain[] how a quasi-contract can be found between them and AddShoppers on the basis of their purchases from the in-network retailers (or on the basis of AddShoppers' acquisition and use of their personal information)"). And because Plaintiff's other claims fail, her unjust enrichment claim necessarily fails. *See* Mot. 15.

**F. Equitable Remedies Are Unavailable to Plaintiff.**

Plaintiff is incorrect—"conclusory allegations will not suffice" to satisfy *Sonner*. *Hubbard v. Google LLC*, 2024 WL 3302066, at *4 (N.D. Cal. July 1, 2024). Plaintiff's bare assertion that "legal remedies are inadequate to address [her alleged] injury," Opp. 14, fails because Plaintiff does not explain why actual and statutory damages are unavailable or inadequate to address her injury. Plaintiff's allegations fall short of those in the cases she cites. *See, e.g.*, *In re Meta Pixel Tax Filing Cases*, 2024 WL 1251350, at *23 (N.D. Cal. Mar. 25, 2024) ("[R]estitution may result in a greater award than damages.").

Plaintiff's Opposition also confirms she failed to plead impending harm necessary for injunctive relief. She asks the Court to "infer[]" that she intends to visit Barnaby's websites again. Opp. 15. Even with that improper inference, her request would fail as she is now fully aware of Barnaby's practices. *See Mikulsky v. Bloomingdale's, LLC*, 713 F. Supp. 3d 833, 846 (S.D. Cal. 2024) (plaintiff's future use of website "would constitute consent" because "Plaintiff has notice of Defendants' use of session replay code"). And Plaintiff has not alleged any ongoing harm from Microsoft's purported past collection of her anonymized data.

## IV. CONCLUSION

The Court should dismiss Plaintiff's claims against Microsoft.

Dated: October 4, 2024

DAVIS WRIGHT TREMAINE LLP

By: /s/ James H. Moon
James H. Moon

*Attorneys for Defendant Microsoft Corporation*



**DAVIS WRIGHT TREMAINE LLP**
LAW OFFICES
865 S. Figueroa St., Suite 2400
Los Angeles, CA 90017